Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Eduard Korsinsky (to be admitted *pro hac vice*)
Email: ek@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiff Andrew Okusko*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW OKUSKO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., THE TEZOS FOUNDATION, KATHLEEN BREITMAN, ARTHUR BREITMAN, and TIMOTHY DRAPER,<br><br>        Defendants. | Case No. 3:17-cv-06829<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(a)(1) AND 15(a) OF THE SECURITIES ACT OF 1933**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Andrew Okusko ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of the federal securities laws the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) documents and solicitation materials released by Defendants in connection with the Tezos ICO (defined below), public statements made by Defendants concerning Tezos, and media publications concerning Tezos and the Tezos ICO, and (b) Plaintiff believes that further substantial evidentiary support will exist for the allegations set

forth herein after a reasonable opportunity for discovery.  Many of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their control.

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action on behalf of himself and all others similarly situated against Dynamic Ledger Solutions, Inc. ("DLS"), The Tezos Foundation, Kathleen Breitman ("K. Breitman"), Arthur Breitman ("A. Breitman," and together with K. Breitman, the "Breitman Defendants," and collectively with DLS and The Tezos Foundation, "Defendants") for their violations of Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1), 77o(a), of the Securities Act of 1933 (the "Securities Act"), and Timothy Draper ("Draper"), as a control person, under Section 15(a) of the Securities Act, of Defendant DLS and Defendant Tezos Foundation.  Specifically, in connection with Tezos' Initial Coin Offering (the "Tezos ICO"), Defendants raised approximately $232 million in digital cryptocurrencies by offering and selling unregistered securities in direct violation of the Securities Act.

2.      From July 1, 2017 through July 14, 2017, Defendants ran the Tezos ICO during which they raised and were paid approximately 65,703 Bitcoin ("BTC") and 361,122 Ether ("ETH")—worth approximately $232 million at the time.  The primary purpose of the Tezos ICO was to raise funds to develop and establish a Tezos blockchain network and create a Tezos cryptocurrency, the Tezos Token ("XTZ").

3.      Defendants have attempted to portray the Tezos ICO as a mere "fundraiser," under which "contributors" or "donors" made "donations," and would receive a certain number of promised Tezos Tokens, based on the amount "donated," that would be issued when, or if, the Tezos blockchain was launched.  In reality, the Tezos ICO was a clear offer and sale of securities because, *inter alia*, Defendants touted, and Plaintiff and other Tezos ICO investors reasonably expected, that the XTZ investors were promised after the launch of the Tezos blockchain would be worth more than the BTC and ETH invested.

4.      The Securities Act's registration requirements are designed to protect investors by ensuring they are provided adequate information upon which to base their investment decisions.  Absent registration, issuers of securities are able to tout their investment opportunities with no limitations

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

whatsoever.  For example, an issuer could omit any information that would make a potential investor think twice before investing (*e.g.*, conflicts of interest or major setbacks to core product lines), or peddle its securities using unbounded exaggerations regarding the progress of its products, business plan, business strategies, or even fabricate the existence of relationships with vendors or other business partners.

5.     Due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent any of the protections under the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security.  As detailed herein, Defendants' attempt to paint the Tezos ICO as a "fundraiser" is a disturbingly transparent effort to mask the fact that the Tezos ICO was, and has been at all times, been an offer and sale of unregistered securities.

6.     Importantly, Defendants' obvious attempts to circumvent registration requirements, and their calculated deprivation of investors' rights and protections under the federal securities laws, are not determinative as to Plaintiff's claim, because Defendants are strictly liable for the offering and selling of unregistered securities.  Rather, Defendants' actions are outlined herein to stress the urgency and need for immediate judicial intervention to preserve Plaintiff's and Tezos ICO investors' significant financial interests which Defendants currently control, and to rectify existing and future irreparable harm to Plaintiff and Tezos ICO investors.  For these reasons, Plaintiff on behalf of himself, and all similarly situated Tezos ICO investors, seeks compensatory, injunctive, and recissory relief, providing rescission and repayment of all investments into the Tezos ICO, and securing and conserving such funds until repayment.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 22 of the Securities Act (15 U.S.C. § 77v) because Plaintiff alleges violations of Sections 12(a)(1) and 15(a) of the Securities Act.

8.     The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

1    render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and

2    substantial justice.

3           9.     Venue is proper in this District under Section 22 of the Securities Act, 15 U.S.C. § 77v,

4    as well as under 28 U.S.C. § 1391, because: (a) the conduct at issue took place and had an effect in this

5    District; (b) a substantial portion of the corporate transactions and wrongs complained of herein

6    occurred here; and (c) Defendants have received substantial compensation and other transfers of money

7    here by doing business here and engaging in activities having an effect in this District.

8    **PARTIES AND RELEVANT NON-PARTIES**

9          10.    Plaintiff invested in the Tezos ICO on July 1, 2017, by transmitting 0.10087901 BTC,

10   valued at $248.99, and on July 4, 2017, by transmitting 0.10087777, valued at $263.92 to Defendant

11   Tezos Foundation.

12         11.    Defendant DLS is a Delaware corporation founded in August 2015.  DLS is controlled

13   by the Breitman Defendants.  Defendant Draper, through his firm Draper Associates, had, and may

14   continue to still hold, an ownership interest in Defendant DLS.  Defendant DLS owns all of the Tezos-

15   related intellectual property, including the source code for the Tezos blockchain network still in

16   development and the Tezos trademark.

17         12.    Defendant Tezos Foundation is a Swiss foundation based in Zug, Switzerland that

18   continues to seek not-for-profit status, but has not been granted such under Swiss law at this time.

19   Defendant Tezos Foundation was created to store the so-called "donations" raised from the Tezos ICO.

20   Defendant Tezos Foundation is described by Defendants as being managed by a three-person board.

21   However, the operation primarily appears to be run by Johann Gevers ("Gevers").  The Breitman

22   Defendants have recently been engaging in a very public ongoing power struggle with Gevers regarding

23   control over Defendant Tezos Foundation, and thus the financial assets raised in the Tezos ICO.

24         13.    Defendant K. Breitman co-founded DLS and is referred to as the "CEO of Tezos."  Prior

25   to working on Tezos full-time, Defendant K. Breitman worked in finance as a management associate

26   at the hedge fund, Bridgewater Associates.  Defendant K. Breitman is domiciled in this District in

27   Mountain View, California.

28

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

14.     Defendant A. Breitman co-founded DLS and is referred to as the "CTO of Tezos."  Prior to working on Tezos full-time, Defendant A. Breitman worked in finance for Morgan Stanley and prior to that, for Goldman Sachs as a high frequency trader.  Defendant A. Breitman is domiciled in this District in Mountain View, California.

15.     The Breitman Defendants have been married to each other at all relevant times referred to herein.

16.     Defendant Draper is a billionaire venture capitalist that runs Draper Associates, a venture capital firm operating out of Menlo Park, California.  Defendant Draper, through his firm Draper Associates, had an ownership interest in Defendant DLS during the Tezos ICO, and may continue to hold an interest.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action individually and as a class action on behalf of all investors in the Tezos ICO who are being, and will be, harmed by Defendants' actions described herein (the "Class"), absent judicial intervention.  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Breitman Defendants and Defendant Draper.

18.     This action is properly maintainable as a class action under the Federal Rule of Civil Procedure 23.

19.     While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in this Class.  All members of the Class may be identified by records maintained by Defendants and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

20.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following: (i) whether Defendants offered and sold unregistered securities to the Class during the Tezos ICO; (ii) whether Plaintiff and other Class members will suffer irreparable harm if

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

such securities laws violations are not remedied; and (iii) whether the Class is entitled to injunctive, compensatory, and/or recissory relief as a result of Defendants' wrongful conduct as alleged herein.

21.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.  Plaintiff and the other members of the Class have all sustained harm in a substantially identical manner as a result of Defendants' wrongful conduct as alleged herein.

22.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

23.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

24.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

25.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

26.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury they will continue to suffer absent judicial intervention.

## SUBSTANTIVE ALLEGATIONS

### Background on Tezos

27.     On August 3, 2014 and September 4, 2014, respectively, the Tezos position paper and white paper was published by "L.M Goodman."  Upon information and belief, L.M Goodman is (or, at least was) a pseudonym used by Defendant A. Breitman.  These papers discussed the concept for a new blockchain that the author believed would improve upon existing blockchain technologies.

28.     In January 2015, Zooko Wilcox-O'Hearn ("Zooko"), one of the founders of Zcash (a cryptocurrency launched in October 2016), became Tezos' first advisor.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

29.     In early 2015, a "Tezos Business Plan" was created which listed Defendant A. Breitman as the Chief Executive Officer ("CEO") of Tezos.

30.     On August 6, 2015, Defendant DLS was incorporated in Delaware with Defendant A. Breitman named as CEO.  Today, DLS is held out as being controlled and co-founded by both Breitman Defendants.

31.     From September 2016 through March 2017, Defendant DLS raised investments from various hedge funds, individuals, and at least one venture capital firm.

**The Tezos "Fundraiser"**

32.     In early 2017, the Breitman Defendants formulated a plan to conduct an initial coin offering to raise capital for the blockchain network they wanted to establish.  To do so, they decided the best course of action would be to create Defendant Tezos Foundation, which was intended to be incorporated as a not-for-profit in Switzerland.  Defendant Tezos Foundation has continuously sought not-for-profit status and has yet to receive such.  The idea was to have Defendant Tezos Foundation run a "fundraiser" under which "contributors" or "donors" would make "donations" to the foundation, and in exchange for these "donations," the foundation would "recommend" that when, or if, the promised Tezos blockchain was created, the "contributor" would receive a certain amount of the Tezos Tokens (XTZ), corresponding to the amount of their "donation."

33.     In terms of corporate structure, Defendant DLS would own "all of the Tezos-related intellectual property" and it would advise Defendant Tezos Foundation "closely on technology."  In addition, a contractual arrangement was made under which Defendant Tezos Foundation will acquire DLS and all of its IP and business relationships three months after the Tezos' blockchain's and XTZ's successful launch.  As compensation for this acquisition, Defendant DLS stockholders would receive 10% of the initial tokens created on the new blockchain to be dealt out over four years, and immediately receive 8.5% of the "contributions" or "donations" that were made during the "fundraiser."

34.     In early May 2017, it was announced that Defendant Draper, through his firm Draper Associates, would be participating in the Tezos ICO by investing and gaining an ownership interest in Defendant DLS.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

1    *The Terms of the Tezos ICO Presented a Thinly-Veiled Investment Offer*

2         35.    The Tezos ICO had a significantly different model than most ICOs, in that there was no

3    cap to the number of Tezos Tokens that could be sold.  As Defendant K. Breitman stated to Reuters

4    prior to the launch of the Tezos ICO, "[w]hat we're going to do is allow as many people who want to

5    buy into the crowdsale over a two-week period."  Essentially meaning that there was no cap to the

6    amount of investments Tezos would accept.  In return for these investments, investors would receive

7    essentially an I-O-U for XTZ, which may never exist.  As mentioned, Defendants had opted to describe

8    the Tezos ICO as merely a "fundraiser."

9         36.    The core offer in the Tezos ICO was an offer for 5,000 XTZ (in I-O-U form of course)

10   for 1 BTC (valued around $2,500 at that time).[1]  Or in Defendants' words, if a "contributor" was to

11   "donate" 1 BTC ($2,500) then Defendant Tezos Foundation would "recommend" that the "contributor"

12   receive 5,000 XTZ when, or if, the Tezos blockchain is created.  It is abundantly obvious that

13   Defendants were offering 5,000 XTZ for 1 BTC ($2,500 at the time) and investors were engaging in

14   the Tezos ICO with the expectation that the 5,000 XTZ would be worth more than 1 BTC.

15        37.    In addition, the "fundraiser" also had a term that stated a "donation" less than .1 BTC

16   would not guarantee the receipt of any XTZ, which objectively closely resembles a minimum

17   investment amount in a standard investment/security issuance.  In short, the terms of the Tezos ICO

18   clearly indicate that Defendants' use of terms like "donation" and "recommend" served little more than

19   an ineffective façade to conceal the fact that the Tezos ICO was a sale of securities.

20        38.    The artifice of this terminology had its clear genesis in a publication from Coinbase, an

21   online exchange for buying and selling digital currencies, published on December 7, 2016 entitled, "A

22   Securities Law Framework for Blockchain Tokens."  This publication included "best practices" ICO

23   issuers could take in order to avoid falling under the definition of an "investment contract" under the

24   *Howey* test.  Included was a securities law analysis provided by Debevoise & Plimpton LLP and an

25   appendix with a chart of characteristics and a point system to "estimate how likely a particular

26

27   ─────────────────────
     [1]  To note, as of November 27, 2017, one BTC is worth $9,575.00.  Meaning while Plaintiff and the
28   Class have held on to essentially worthless I-O-Us for XTZ, while the Tezos blockchain is continuously
     delayed, Defendants have gained nearly 300% on the Class' BTC investments.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

blockchain token is to be a security under US federal securities laws."  The chart listed characteristics that would either increase points or deduct points, and the more points a token had the more likely it was to be a "security."  To note, the Tezos Token's overall score would have been well over the highest category of "Very Likely" using this chart.  In this chart, the largest "point" deduction, by far, was for a token in which "[b]ackers contribute to a cause and receive a 'thank you' token which has no economic value."  This description is highly similar to Defendants' illusory claims that the Tezos ICO involved mere "donations."

39.     The Tezos ICO eventually was scheduled to be open from July 1, 2017 through July 14, 2017.

***The Tezos Tokens Are Securities***

40.     The facts are indisputable that Defendants participated in the offer and sale of Tezos Tokens.  Specifically, the Breitman Defendants' founded Defendant DLS.  Defendant DLS holds the Tezos IP, including trademarks, and as stated by the President of Defendant Tezos Foundation, when discussing the Breitman Defendants and Defendant DLS, "[t]hey control the foundation's domains, websites and email servers, so the foundation has no control or confidentiality in its own communications."  Given that the Tezos ICO was conducted by Defendant Tezos Foundation, through its website, it is indisputable that the Breitman Defendants and Defendant Draper, through Defendant DLS, controlled and orchestrated Defendant Tezos Foundation's actions in conducting the Tezos ICO.  As Defendant Draper has proclaimed, absent his involvement, "The sale might not have happened at all!"

41.     When determining whether a security has been offered and sold, the focus must be on the economic realities underlying the transaction.  Here, the economic realities are that Plaintiff and the Class invested BTC and ETH in order to receive Tezos Tokens, which they expected would be worth more than their BTC and ETH investment.  Plaintiff's and the Class' investment of BTC and ETH constitutes an investment of money for the purposes of determining whether an investment involved a security.

42.     Plaintiff and the Class were investing in a common enterprise with Defendants, as the Tezos ICO investments were pooled under the control of Defendant Tezos Foundation, and the success

of the Tezos network—and thus potential profits stemming from the future valuation of the Tezos Tokens—aligned the interests of Plaintiff and the Class with Defendants.  Further, Defendant Tezos Foundation has stated that it expects to use approximately 10% of the Tezos Tokens created to "finance the purchase of the shares of" Defendant DLS.  Given that the Breitman Defendants founded and controlled Defendant DLS, it is obvious that any potential value ascribed to the Tezos Tokens was expected to be for their personal benefits, in addition to Plaintiff's and the Class' benefit.

43.    The value, and existence, of the Tezos Tokens is entirely dependent on Defendants' actions and as explicitly provided in the Tezos contribution terms, each investor must certify that they "understand[] and accept[] that he does not have any influence over the governance of TEZOS." Further, as a practical matter, if Defendants never create the Tezos blockchain, and consequently, the Tezos Tokens, Plaintiff's and the Class' current I-O-Us for Tezos Tokens will be somehow even more worthless than they currently are.  Accordingly, it is obvious that any success from creating the Tezos Token and future potential increases to the Tezos Token's value was, and continues to be, entirely dependent on Defendants' actions.

***Tezos and Affiliates Viewed the Tezos ICO as Selling Investments***

44.    On or around June 16, 2017, about two weeks prior to the launch of the Tezos ICO, Defendant K. Breitman was interviewed on Episode 38 of the Fintech Podcast, "Around the Coin." During this interview, the host asked how Tezos was planning to distribute the Tezos Tokens.  In response, Defendant K. Breitman had obvious difficulties trying to maintain the illusion that the Tezos ICO involved "donations," and not selling investments, as quoted below, verbatim (although omitting multiple periods of uncomfortable silence),

> What we're doing instead is um, we're um, we're, we're selling uh, rather the Foundation is, um recommending an allocation of tokens to the genesis block based on contributions to a Swiss non-profit, um and, there's a suggested um allocation amount, so one Bitcoin for 5,000 Tezos Tokens and we're going to sell them over the course of, uh or erm, rather have them, um, have them up for donation for the course of two weeks umm—

*See* https://aroundthecoin.com/interview/fintech-podcast-episode-138-interview-with-kathleen-breitman-ceo-of-tezos/ at 13:40 – 14:22.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

45.     The host then graciously interrupted to guide Defendant K. Breitman to calmer waters. Regardless, the point exhibited above (and more plainly in the audio), is that even Tezos' "CEO" had obvious difficulties keeping a straight face when trying to explain that the Tezos ICO was really a charitable donation to a "non-profit."   Additionally, it is worth mentioning that Defendant Tezos Foundation did not, and still does not, have not-for-profit status.

46.     Similarly, on June 29. 2017, two days prior to the Tezos ICO's launch, Zooko, Tezos' first "advisor" that joined the team in January 2015, published a blog post entitled "Why I'm advising Tezos."  Before discussing his reasoning on this topic, at the top of the page, the following disclaimer was written

> *But first, I want to emphasize that this does not constitute a recommendation that you participate in the upcoming Tezos crowdfunding.* People sometimes ask me for investment advice, but I never give investment advice. I always just say:
> - Never risk more money than you can afford to lose, on something new.
> - Never invest in something you don't understand.

47.     Obviously, Tezos' own advisor who had been advising Tezos for over two years saw the "fundraiser" or "crowdfunding" as an investment.

### Investors Saw the Tezos ICO as Buying Investments

48.     It was announced in May 2017 that Defendant Draper was investing in Defendant DLS. On October 22, 2017, CoinTelegraph, an online news publication focused on covering cryptocurrencies, published a statement that Defendant Draper sent the news outlet protesting a critical article that had been written regarding Tezos and the nature of Defendant Draper's investments in Defendant DLS.  In that statement Defendant Draper explained that without him and his investor group, "The sale might not have happened at all!" and that "We also participated in the Pre-sale."  Apparently, Defendant Draper, a seasoned professional investor that owned or still owns part of Defendant DLS, viewed the Tezos ICO as a "sale" and not a "donation" in exchange for a "recommendation" pursuant to a "fundraiser."

49.     Similarly, another professional investor, Kevin Zhou, co-founder of Galois Capital was quoted by Reuters when asked whether he viewed the Tezos ICO as an investment as saying, "For me and for a lot of people this is an investment.  We are looking for a return."

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

50.     Additionally, there are countless blog posts, forum posts, and comments from non-hedge fund or venture capital investors with language such as "Why I'm investing in the Tezos ICO despite my concerns."  Further, there are countless articles from outlets proclaiming and discussing the Tezos ICO's monetary success from its *sale* raising over $200 million dollars.

***The Artifice of Operating the ICO through the Foundation***

51.     Defendants have claimed that the reason they chose the foundation structure with "donations" and a "fundraiser" was to ensure pure transparency regarding Defendant Tezos Foundation's operations.  However, Defendant K. Breitman's statements contradict that notion.  For example, in response to a question from Reuters on the rationale for using a foundation in Zug, Switzerland, she is quoted as explaining that she and Defendant A. Breitman chose Zug because Switzerland "has a regulatory authority that had a sufficient amount of oversight but not like anything too crazy."

52.     Similarly, during an interview on Flux Podcast, recorded on July 6, 2017, (shortly after the Tezos ICO launched) Defendant K. Breitman was asked about the same choice to create Defendant Tezos Foundation in Switzerland and the following exchange ensued,

> **[HOST]**: It's amazing how you're paving the way and there doesn't seem to be any regulatory framework for what you're doing. What was your thinking on going to Switzerland? I know that the U.S. money transmission laws are nuts on a state by state basis, it's so complex here. But it sounds like it's complex there as well. What are your thoughts on how the regulatory framework will evolve?
>
> **KB**: Well Johann is the founder of the Crypto Valley in Zug, which is a Canton in Zurich. It has a ton of Bitcoin companies it has a ton of watching companies located there and including Ethereum foundation.
>
> **[HOST]**: So I guess they paved the way. Do you think others will follow— do you think there's a best practice being set here?
>
> **KB**: I think so. There are other a few other places—Gnosis which is an ethereum prediction market token I think they had their token sale out of Gibraltar. Estonia wants to do work around this. I think the Ethereum foundation itself is actually in Singapore right now. So there's all sorts of accommodating usually small nations that are willing to work with you

53.     Apparently, the choice to create and use Defendant Tezos Foundation had more to do with finding a flexible regulatory environment than it did with ensuring transparency.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

1    *A "Fundraiser"?*

2          54.    On July 25, 2017, the SEC issued a report on the DAO, in which it advised those using

3    "distributed ledger or blockchain-enabled means for capital raising, to take appropriate steps to ensure

4    compliance" with the federal securities laws, and stated that "[a]ll securities offered and sold in the

5    United States must be registered with the Commission . . ." or qualify for an exemption from

6    registration.  On the same day, the SEC issued an investor bulletin urging caution when investing in

7    ICOs and to be mindful that promoters and initial sellers that lead buyers of tokens to expect a return

8    on their investment or participate in shared returns provided by the project may be offering a security

9    for sale.  On September 29, 2017, the SEC announced that they charged two companies with defrauding

10   investors in connection with "so-called" ICOs that were purportedly backed by investments.

11         55.    Most recently, on November 8, 2017, Jay Clayton, the newly appointed Chairman of the

12   SEC, delivered a speech to the 49th Annual Institute on Securities Regulation in which he equated ICOs

13   with securities.  After this speech, the Wall Street Journal reported Chairman Clayton as stating "I have

14   yet to see an ICO that doesn't have a sufficient number of hallmarks of a security."  This statement

15   sums up the core issue here quite succinctly.  The fact of the matter is, digital currencies are a relatively

16   new technology and various parties are taking advantage of the time it takes for regulatory agencies to

17   address developments in the area to engage in unlawful conduct with near impunity, as Defendants

18   have here, *i.e.*, raising hundreds of millions of dollars by promising fantastic technologies and returns

19   without registering their offerings.

20         56.    It is clear from recent events that the rampant disregard of federal securities laws and

21   consequently, abuse of investors, taking place in the ICO space has been noted by regulatory agencies,

22   including the SEC.  Eventually, ICO companies will have no choice but to register with the SEC and

23   investors potentially interested in investing in cryptocurrencies or blockchain technologies will be

24   afforded the ability to do so while also being afforded their rights and protections under the federal

25   security laws, so that they may be empowered to make fully informed investment decisions.  In the

26   meantime, investors like Plaintiff and the Class have already been deprived of such protections and

27   investor rights by Defendants.  Fortunately, the private right of action contained in Section 12(a)(1)

28   providing strict liability for the sale of unregistered securities was created for just this situation.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

**CLAIMS FOR RELIEF**

**COUNT I**

**Claim for Violation of Section 12(a) of the Securities Act**
**Against Defendant DLS, Defendant Tezos Foundation, and the Breitman Defendants**

57.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

58.     Section 12(a)(1) grants Plaintiff a private right of action against any person who offers or sells a security in violation of Section 5, and states that such person,

> Shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

59.     From July 1, 2017 through July 14, 2017, in connection with the Tezos ICO, Defendant DLS, Defendant Tezos Foundation, and the Breitman Defendants unlawfully made use of means or instruments of transportation or communication in interstate commerce or of the mails for the purposes of offering, selling, or delivering unregistered securities in direct violation of Section 5(a) and 5(c) of the Securities Act.

60.     The promise of future distribution of XTZ during the Tezos ICO was the sale of an unregistered security under controlling federal law.  Tezos Tokens exhibit the following particular hallmarks of a security under the *Howey Test*.  Specifically: (a) in order to receive any Tezos Tokens, or the promise thereof, an investment of money, in the form of BTC and/or ETH was required; (b) the investment of money was made into the common enterprise that is Tezos and the potential future Tezos blockchain; and (c) the success of the investment and any potential returns on such was entirely reliant on Defendants' ability to create and launch the Tezos blockchain network, and create the Tezos Tokens.

**COUNT II**

**Claim for Violation of Section 15(a) of the Securities Act**
**Against the Breitman Defendants and Defendant Draper**

61.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

62.     Due to their ownership in and control over Defendant DLS, the Breitman Defendants acted as controlling persons of Defendant DLS, and thus, Defendant Tezos Foundation, within the

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE SECURITIES ACT OF 1933

1   meaning of Section 15(a) of the Securities Act as alleged herein.  Similarly, due to Defendant Draper's

2   ownership interest in Defendant DLS, through his firm (Draper Associates), and his own proclamation

3   that absent his involvement, "The sale might not have happened at all!" Defendant Draper is liable as

4   a controlling person of DLS.  By virtue of their positions as officers and/or directors and participation

5   in and/or awareness of Tezos' operations, they had the power to influence and control and did influence

6   and control, directly or indirectly, the decision making relating to the Tezos ICO, including the decision

7   to engage in the sale of unregistered securities via the Tezos ICO.

8       63.    By virtue of the foregoing, the Breitman Defendants and Defendant Draper violated

9   Section 15(a) of the Securities Act.

10                              **PRAYER FOR RELIEF**

11      **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

12      A.     Declaring that this action is properly maintainable as a class action and certifying

13   Plaintiff as the Class representative and his counsel as Class counsel;

14      B.     Declaring that Defendants offered and sold unregistered securities in violation of the

15   federal securities laws;

16      C.     Declaring Defendants violated Sections 12(a)(1) and/or 15(a) of the Securities Act;

17      D.     Preliminarily enjoining Defendants from making further transfers or dissipations of the

18   investments raised during the Tezos ICO, or using such funds in any further purchases or transactions;

19      E.     Requiring an accounting of the remaining funds and assets raised from Plaintiff and the

20   Class in connection with the Tezos ICO;

21      F.     Imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff

22   and the Class;

23      G.     Ordering rescission of the investments made by Plaintiff and the Class relating to the

24   Tezos ICO;

25      H.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's

26   attorneys' and experts' fees; and

27      I.     Granting such other and further relief as this Court may deem just and proper.

28

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

1

## JURY DEMAND

2

Plaintiff respectfully requests a trial by jury on all issues so triable.

3

4

Dated: November 28, 2017        **LEVI & KORSINSKY, LLP**

5

By: _/s/Rosemary M. Rivas_

6

Rosemary M. Rivas
44 Montgomery Street, Suite 650

7

San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

8

9

Eduard Korsinsky (to be admitted pro hac vice)
Email: ek@zlk.com

10

**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor

11

New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

12

13

*Counsel for Plaintiff Andrew Okusko*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 12(A)(1) AND 15(A) OF THE
SECURITIES ACT OF 1933

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Andrew okusko

declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently am expected to received Tezos Tokens (XTZ) when, or if, the Tezos blockchain is launched. My purchase history is set forth in the chart attached hereto.

5. During the three years prior to the date of this Certification, I have not participated, nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this 28th day of November, 2017, at Corinna, ME.

Signed:

NAME: Andrew Okusko

**ANDREW OKUSKO**

**TEZOS PURCHASE HISTORY**

| Purchase Date | Investment | Dollar Value of Investment | Tezos Tokens (XTZ) Expected |
|---|---|---|---|
| 07/01/2017 | 0.10087901 BTC | $248.99 | Approximately 500 |
| 07/04/2017 | 0.10087777 BTC | $263.92 | Approximately 500 |