Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Eduard Korsinsky (to be admitted *pro hac vice*)
Email: ek@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiff Andrew Okusko*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANDREW OKUSKO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., THE TEZOS FOUNDATION,  KATHLEEN BREITMAN, ARTHUR BREITMAN, and TIMOTHY DRAPER,<br><br>        Defendants. | Case No. 3:17-cv-06829-RS<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[This motion will be subject to an order shortening time pursuant to L.R. 6-1.]**<br><br>Date:       January 11, 2018<br>Time:      1:30 p.m.<br>Judge:     Hon. Richard Seeborg<br>Crtrm.:    3, 17th Floor |

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 1

    The Tezos ICO ................................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

    I.      STANDARDS OF LAW ................................................................................... 3

    II.    PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS .......... 4

        A.    Elements of the Claims ................................................................................ 4

        B.    No Registration Statement Was in Effect for the Tezos Tokens Defendants Offered and Sold ......................................................................... 6

        C.    Tezos Tokens Are Securities ........................................................................ 8

            1.    Tezos ICO Participants Invested Money ................................. 11

            2.    Tezos ICO Participants Invested in a Common Enterprise ................. 12

            3.    Tezos ICO Participants Invested with the Expectation of Profits Produced by the Efforts of Others ......................................... 13

        D.    Interstate Means Were Used to Offer and Sell the Tezos Tokens ................... 15

    III.    PLAINTIFF AND THE CLASS ARE THREATENED WITH IRREPARABLE HARM ............................................................................................................. 15

    IV.    THE BALANCE OF THE EQUITIES FAVORS PLAINTIFF .................................. 17

    V.    THE PUBLIC INTEREST WILL BE SERVED BY AN INJUNCTION ................... 17

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Akbar v. Bangash*,
  No. 15-cv-12688, 2017 U.S. Dist. LEXIS 106441 (E.D. Mich. July 11, 2017) ..............................5

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................................................3, 4

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003) ..................................................................................................3, 4

*Datatech Enters. LLC v. FF Magnat Ltd.*,
  No. 12-cv-4500, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sept. 14, 2012) ....................4, 16, 18

*El Khadem v. Equity Securities Corp.*,
  494 F.2d 1224 (9th Cir. 1974), *cert. denied*, 419 U.S. 900 (1974) ..............................................11

*FTC v. Affordable Media, LLC*,
  179 F.3d 1228 (9th Cir. 1999) ..................................................................................................17

*FTC v. H.N. Singer, Inc.*,
  668 F.2d 1107 (9th Cir. 1982) ....................................................................................................4

*Hector v. Wiens*,
  533 F.2d 429 (9th Cir. 1976) ....................................................................................................11

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990) ....................................................................................................4

*Howard v. Everex Sys.*,
  228 F.3d 1057 (9th Cir. 2000) ....................................................................................................4

*Hudson v. Sherwood Securities Corp.*,
  No. 86-cv-20344, 1993 WL 165645 (N.D. Cal. May 14, 1996) ..................................................6

*In re Focus Media Inc.*,
  387 F.3d 1077 (9th Cir. 2004) ....................................................................................................4

*Innovation Ventures, LLC v. Pittsburgh Wholesale Grocers, Inc.*,
  No. 12-cv5523, 2013 U.S. Dist. LEXIS 97767 (N.D. Cal. July 12, 2013) ..................................17

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ................................................................................................3, 16

*Kremen v. Cohen*,
  No. 5:11-cv-5411, 2011 U.S. Dist. LEXIS 141273 (N.D. Cal. Dec. 7, 2011)..............................17

*Lewis v. Walston & Co.*,
  487 F.2d 617 (5th Cir. 1973) ......................................................................................................5

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) ...........................................................................................5

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ..........................................................................................5, 18

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
    737 F. Supp. 1521 (S.D. Cal. 1989) *aff'd, Reebok*, 972 F.2d at 563 ........................17

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ..............................................................................10

*SEC v. Abacus Int'l Holding Corp.*,
    No. 99-cv-2191, 2001 U.S. Dist. LEXIS 12635 (N.D. Cal. August 16, 2001)..............15

*SEC v. Alliance Leasing Corp.*,
    28 Fed. Appx. 648 (9th Cir. 2002) ....................................................................11, 12

*SEC v. Bar Works Capital, LLC*,
    No. 17-cv-4396, 2017 U.S. Dist. LEXIS 170983 (N.D. Cal. Oct. 16, 2017) ...............17

*SEC v. Edwards*,
    540 U.S. 389 (2004) ...............................................................................................9

*SEC v. Eurobond Exch.*,
    13 F.3d 1334 (9th Cir. 1994) ................................................................................13

*SEC v. Glenn W. Turner Enters., Inc.*,
    474 F.2d 476 (9th Cir. 1973) .....................................................................9, 12, 13

*SEC v. Goldfield Deep Mines Co.*,
    758 F.2d 459 (9th Cir. 1985) ................................................................................13

*SEC v. Joiner Corp.*,
    320 U.S. 344 (1943) .............................................................................................10

*SEC v. Murphy*,
    626 F.2d 633 (9th Cir. 1980) ............................................................................5, 13

*SEC v. Phan*,
    500 F.3d 895 (9th Cir. 2007) ..................................................................................5

*SEC v. Ralston Purina Co.*,
    346 U.S. 119 (1953) ...............................................................................................5

*SEC v. Rubera*,
    350 F.3d 1084 (9th Cir. 2003) ..............................................................................13

*SEC v. Shavers*,
    No. 4:13-cv-416, 2013 U.S. Dist. LEXIS 110018 (E.D. Tex. Aug. 6, 2013) ...............11

*SEC v. Sierra Brokerage Servs., Inc.*,
    712 F.3d 321 (6th Cir. 2013) ..................................................................................5

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

*SEC v. U.S. Reservation Bank & Tr.*,
   289 Fed. Appx. 228 (9th Cir. 2008) ..................................................................... 11

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946) .............................................................................................. passim

*Tcherepnin v. Knight*,
   389 U.S. 332 (1967) .............................................................................................. 9

*U.S. Philips Corp. v. KBC Bank N.V.*,
   590 F.3d 1091 (9th Cir. 2010) ............................................................................. 3

*United Housing Found., Inc. v. Forman*,
   421 U.S. 837 (1975) .............................................................................................. 9

*Uselton v. Comm. Lovelace Motor Freight, Inc.*,
   940 F.2d 564 (10th Cir. 1991) ............................................................................. 11

*Warfield v. Alaniz*,
   569 F.3d 1015 (9th Cir. 2009) ............................................................................. 14, 15

*Winter v. Natural Res. Def. Council*,
   555 U.S. 7 (2008) .................................................................................................. 3

*Wolf v. Banco Nacional De Mexico*,
   549 F. Supp. 841 (N.D. Cal. 1982), *rev'd on other grounds*, 739 F.2d 1458 (9th
   Cir. 1984), *cert. denied*, 469 U.S. 1108 (1985) ............................................... 5

**Statutes**

15 U.S.C. § 77b(a)(1) ................................................................................................. 8, 10

15 U.S.C. § 77e ........................................................................................................... 4, 5, 15

15 U.S.C. § 77o(a) ...................................................................................................... 4

15 U.S.C. § 77l(a)(1) .................................................................................................. 4, 5, 15

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... 1

Fed. R. Civ. P. 65(b) .................................................................................................. 1

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

**INTRODUCTION**

Plaintiff Andrew Okusko ("Plaintiff"), who has brought the present action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public investors in the Tezos initial coin offering (the "Class") that took place July 1, 2017 through July 14, 2017 (the "Tezos ICO"), respectfully submits this memorandum of points and authorities in support of his motion, pursuant to Fed. R. Civ. P. 65(b), requesting that the Court issue an order preliminarily enjoining Defendants Dynamic Ledger Solutions, Inc. ("DLS"), the Tezos Foundation, Kathleen Breitman ("K. Breitman"), Arthur Breitman ("A. Breitman," and together with K. Breitman, the "Breitman Defendants," and collectively with DLS, the Tezos Foundation, and K. Breitman, "Defendants"), from transferring or dissipating assets raised in connection with the Tezos ICO, including, but not limited to, Bitcoin ("BTC"), Ether ("ETH"), and any other assets that Defendants have since purchased with funds invested in the Tezos ICO.  Such assets rightfully belong to Plaintiff and the Class and thus Plaintiff seeks an order (i) preliminarily enjoining the Breitman Defendants from requesting or receiving funds from the investments collected during the Tezos ICO for the payment of legal fees involving this and related actions alleging Defendants unlawfully offered and sold unregistered securities during the Tezos ICO; (ii) preliminarily enjoining Defendants from making further transfers or dissipations of the investments collected during the Tezos ICO, or using such funds in any further purchases or transactions; (iii) requiring an accounting of the remaining funds and assets invested by Plaintiff and the Class; (iv) freezing Defendants' accounts holding the funds invested during the Tezos ICO; and (v) imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff and the Class, pending a determination by the Court on whether Tezos ICO investors are entitled to rescission of their BTC and ETH investments due to Defendants' violations of the federal securities laws.

**STATEMENT OF FACTS**

**The Tezos ICO**

In 2014, two papers were published online by "L.M Goodman" discussing the Tezos blockchain concept.  *Tezos and Tezos Foundation Overview document* (hereinafter "Tezos Overview"), at pg. 7, attached as Exhibit 1 to the Declaration of Rosemary Rivas in Support of Plaintiff's Motion for Preliminary Injunction ("Rivas Dec.") filed herewith.  In January 2015, Zooko Wilcox O'Hearn

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   ("Zooko") became Tezos' first advisor.  *Id*.  In mid-2016, Defendant DLS was founded by the Breitman

2   Defendants and from September 2016 through March 2017, Defendant DLS raised investments from

3   various hedge funds, individuals, and at least one venture capital firm.  *Id*. at pgs. 7, 13.

4          In late 2016 through early 2017, the Breitman Defendants formulated a plan to conduct an initial

5   coin offering to raise capital for the blockchain network they wanted to establish.  *See* Anna Irrera, *et*

6   *al*., *Special Report: Backroom battle imperils $230 million cryptocurrency venture*, Thomson Reuters

7   (Oct. 18, 2017), https://www.reuters.com/article/us-bitcoin-funding-tezos-specialreport/special-report-

8   backroom-battle-imperils-230-million-cryptocurrency-venture-idUSKBN1CN35K  (hereinafter  the

9   "Reuters Tezos Special Report"), excerpts attached to Rivas Dec., Ex. 5 at pgs. 61-62.  The plan

10  involved the creation of Defendant Tezos Foundation, and a scheme under which Defendant Tezos

11  Foundation would conduct a "fundraiser," under which the public could make "donations."  *Id*.

12  Depending on the amount "donated," Defendant Tezos Foundation would "recommend" that, when the

13  Tezos blockchain is created, "contributors" should receive XTZ that would correlate to the amount

14  "donated."  *See Tezos Overview*, Rivas Dec., Ex. 1 at pgs. 12-17.  In early May 2017, it was announced

15  that Defendant Draper, through his firm Draper Associates, would be participating in the Tezos ICO

16  and investing $1.5 million in Defendant DLS and gaining a minority interest as a result.  *Reuters Tezos*

17  *Special Report*, Rivas Dec., Ex. 5 at pgs. 62-63.  Shortly after this investment, the Tezos ICO launched,

18  and ran from July 1, 2017 through July 14, 2017.  *See Tezos Contribution and XTZ Allocation Terms*

19  *and Explanatory Notes* (hereinafter "Tezos Contribution Terms"), Rivas Dec., Ex. 2 at pg. 29.

20         The Tezos ICO involved the offer of XTZ in exchange for Bitcoin ("BTC") or Ether ("ETH").

21  *Fundraiser FAQ*, Rivas Dec., Ex. 3.  The purported "fundraiser" stated that "a contribution of one

22  bitcoin will lead to a recommended allocation of five-thousand tezzies (5,000 XTZ) . . . ."  *Id*. at pg. 38.

23  In other words, this was an offer of 5,000 XTZ for one BTC (worth approximately $2,500 at the time

24  of the Tezos ICO), or the equivalent in ETH.  *Id*.  Further, this offer scaled proportionately, so, for

25  example, in return for .2 BTC, investors would receive 1,000 XTZs.  *Tezos Contribution Terms*, Rivas

26  Dec., Ex., 2 at pgs. 30-35.  However, as explained in the *Fundraiser FAQ*, "[t]he minimum contribution

27  [was] 0.1 BTC or its equivalent in other means."  Rivas Dec., Ex. 3, at pg. 38.

28         According to the Tezos website, the Tezos ICO collected 65,703 BTC and 361,122 ETH from

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

investors during the period between July 1, 2017 and July 14, 2017.  *See* screenshot of Tezos website taken November 25, 2017, Rivas Dec., Ex. 6.  After the Tezos ICO closed, it announced that it received approximately $232 million based on the value of the BTC and ETH Plaintiff and the Class invested. Stan Higgins, *$232 Million: Tezos Blockchain Project Finishes Record-Setting Token Sale*, Coindesk (July 13, 2017), https://www.coindesk.com/232-million-tezos-blockchain-record-setting-token-sale/, Rivas Dec., Ex. 12.  According to the *Fundraiser FAQ*, the Tezos development team estimated that the completion time for the Tezos network was four months and that "[t]he Tezos Foundation [would] not be able to allocate tokens until the network launches."  Rivas Dec., Ex. 3 at pg. 40.  To date, the Tezos network, or "blockchain," has not launched, and consequently, no investors have received the promised XTZ.  Rivas Dec., ¶ 21.  To date, no registration statement has been filed in connection with the Tezos ICO.  *Id*. at ¶ 22.

## ARGUMENT

### I.   STANDARDS OF LAW

The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered.  *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  If a plaintiff shows a "likelihood of irreparable injury and that the injunction is in the public interest," a "preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."  *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003)); *see also Datatech Enters. LLC v. FF Magnat Ltd.*, No. 12-cv-4500, 2012 U.S.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

Dist. LEXIS 131711, at *11 (N.D. Cal. Sept. 14, 2012) ("[W]here an equitable remedy is available, the district court 'has the power to issue a preliminary injunction to preserve the status quo in order to protect the possibility of that equitable remedy.'") (citing *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982)); *In re Focus Media Inc.*, 387 F.3d 1077, 1084-85 (9th Cir. 2004) (affirming lower court's issuance of a preliminary injunction freezing $ 20 million of defendant's assets); *Conn. Gen. Life. Ins. Co.*, 321 F.3d at 881) (affirming district court's asset-freezing injunction where "plaintiffs demonstrated a likelihood of success on the merits and a possibility of irreparable injury . . .").

As discussed below, Plaintiff has established each element of the *Winter* test and has established "serious questions going to the merits and a hardship balance that tips sharply toward" Plaintiff. *Alliance for the Wild Rockies*, 632 F.3d at 1135. Plaintiff has further demonstrated the likely threat of dissipation of assets. As such, the Court should grant the requested relief.

## II.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS

As discussed herein, Defendants have violated Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1) and 77o(a), of the Securities Act by offering and selling unregistered securities during the Tezos ICO. Defendants' actions in conducting the Tezos ICO were in direct violation of the Securities Act and have deprived Plaintiff and the Class of their rights and protections under the federal securities laws. Accordingly, Plaintiff is likely to succeed on the merits of his claim.

### A.   Elements of the Claims

Plaintiff alleges that Defendants violated Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1) and 77o(a), of the Securities Act by offering and selling unregistered securities during the Tezos ICO.[1] Section 12(a)(1), 15 U.S.C. § 77l (a)(1), of the Securities Act creates a private right of action against any person who "offers or sells a security in violation of" Section 5, 15 U.S.C. § 77e, of the Securities

---

[1] As Plaintiff's Section 12(a)(1) claims are predicates to his claims under Section 15(a), the Court need only consider whether Plaintiff is likely to succeed on his Section 12 claims for purposes of the instant motion. *See Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (noting that control person liability under the Securities and Exchange Act of 1934 (the "Exchange Act") requires a showing "primary violation of federal securities laws . . ."). As under Section 15(a) of the Securities Act "the controlling person analysis is the same" as under Section 20(a) of the Exchange Act, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990), the same primary violation predicate would apply here and thus, the Court need only consider Plaintiff's Section 12 claim for the instant motion.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   Act.

2           Section 5 of the Securities Act prohibits the offer or sale of unregistered securities. *Id.* "The

3   lynchpin of the [Securities] Act is its registration requirement." *Omnicare, Inc. v. Laborers Dist.*

4   *Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1323 (2015); *see also SEC v. Murphy*, 626 F.2d

5   633, 643 (9th Cir. 1980) (citation omitted) ("The [Securities] Acts constitute a comprehensive plan to

6   insure this protection by requiring the filing of a registration statement . . ."). "The Securities Act and

7   the required filing of registration statements under Section 5 exist to protect investors by requiring they

8   receive sufficient information to make informed investment decisions." *SEC v. Sierra Brokerage*

9   *Servs., Inc.*, 712 F.3d 321, 328 (6th Cir. 2013) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124

10  (1953)); *see also SEC v. Murphy*, 626 F.2d at 643 (same); *Akbar v. Bangash*, No. 15-cv-12688,

11  2017 U.S. Dist. LEXIS 106441, at *6 (E.D. Mich. July 11, 2017) (same).

12          Due to the varied and innumerable ways in which investors are likely to be manipulated and

13  harmed absent the protections of the federal securities laws, Sections 5 and 12(a)(1) of the Securities

14  Act provide for strict liability against any person who offers or sells an unregistered security. *See Pinter*

15  *v. Dahl*, 486 U.S. 622, 638 (1988) ("The registration requirements are the heart of the [Securities] Act,

16  and § 12[a]1 imposes strict liability for violating those requirements. Liability under § 12[a]1 is a

17  particularly important enforcement tool, because in many instances a private suit is the only effective

18  means of detecting and deterring a seller's wrongful failure to register securities before offering them

19  for sale.") (citation omitted); *see also Wolf v. Banco Nacional De Mexico*, 549 F. Supp. 841, 853 (N.D.

20  Cal. 1982), *rev'd on other grounds*, 739 F.2d 1458 (9th Cir. 1984), *cert. denied*, 469 U.S. 1108 (1985)

21  ("Liability under [section 12(a)(1)] is 'absolute'; a purchaser may recover damages 'regardless of

22  whether he can show any degree of fault, negligent or intentional, on the seller's part.'") (quoting *Lewis*

23  *v. Walston & Co.*, 487 F.2d 617, 621 (5th Cir. 1973)).

24          In order to establish a Section 5 violation, and thus liability under Section 12(a)(1), a "[plaintiff]

25  must point to evidence that: (1) no registration statement was in effect as to the securities;

26  (2) [defendant] sold or offered to sell the securities; and (3) the sale or offer was made through interstate

27  commerce." *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007) (citation omitted); *see also Hudson v.*

28  *Sherwood Securities Corp.*, No. 86-cv-20344, 1993 WL 165645, at *3 (N.D. Cal. May 14, 1996) ("To

5                                      Case No. 3:17-cv-06829-RS

prove liability for selling unregistered securities in violation of section 12[a](1) of the Securities Act, Plaintiff must establish that (a) the securities were not registered; (b) Defendant sold the securities to Plaintiff; and (c) the mails were used in making the sales.") (citation omitted).

As discussed in detail below, each of these three elements are plainly met, and thus, Plaintiff is likely to succeed on the merits of his claims and has undoubtedly satisfied the "serious questions" test in the Ninth Circuit.

### B.   No Registration Statement Was in Effect for the Tezos Tokens Defendants Offered and Sold

There was no registration statement filed with the SEC relating to the Tezos Tokens nor the Tezos ICO.  Rivas Dec., ¶ 22.  Any perusal of the SEC's EDGAR database will confirm that no such Registration Statement was ever filed.  Thus, there is no possible dispute as to whether or not a Registration Statement was filed or ever became effective.

The facts are similarly indisputable that Defendants participated in the offer and sale of Tezos Tokens.  Specifically, the Breitman Defendants founded Defendant DLS.[2]  Rivas Dec., Ex. 1 at pg. 11. Defendant DLS holds the Tezos intellectual property, including trademarks.  *See* Tezos, *Transparency Memo*, https://www.tezos.com/dls (last visited Dec. 4, 2017), excerpt attached to Rivas Dec., Ex. 7 at pg. 71.  As stated by the President of the Tezos Foundation when discussing the Breitman Defendants and Defendant DLS, "[t]hey control the foundation's domains, websites and email servers, so the foundation has no control or confidentiality in its own communications." *Reuters Tezos Special Report*, Rivas Dec., Ex. 5 at pg. 66.  Accordingly, it is indisputable that the Breitman Defendants and Defendant DLS have been, and continue to be, in control of Defendant Tezos Foundation's operations. Additionally, given that Defendant Tezos Foundation "has no control or confidentiality" over its internal communications, it is undeniable that the Breitman Defendants and Defendant DLS are in

---

[2]  Given that Defendant Tezos Foundation oversaw the Tezos ICO and it received and was tasked with managing all "contributions," it is clear that Defendant Tezos Foundation offered and sold Tezos Tokens. *Tezos Overview*, Rivas Dec., Ex. 1 at pgs. 14-17.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

possession of the private keys to Defendant Tezos Foundation's digital currency wallets containing the funds invested during the Tezos ICO. *Id.*

Moreover, as stated in the *Tezos Overview*, Defendant DLS retained "communication consultancy to support its marketing efforts" in connection with the Tezos ICO. Rivas Dec., Ex. 1 at pg. 18. Given that the Tezos ICO was conducted by Defendant Tezos Foundation, through its website, *id.* at pgs. 14-17, and its marketing was directed by the Breitman Defendants and Defendant DLS, *id.* at pg. 18, it is unquestionable that the Breitman Defendants and Defendant DLS dictated Defendant Tezos Foundation's actions in conducting the Tezos ICO.

Additionally, Defendants were fully-aware that they were "selling" Tezos Tokens. For example, approximately two weeks prior to the launch of the Tezos ICO, Defendant K. Breitman was interviewed and had obvious difficulties sustaining the ruse that the Tezos ICO involved "donations" to a "foundation" in exchange for a "recommendation" that "contributors" receive Tezos Tokens, as quoted below, verbatim (although omitting multiple periods of uncomfortable silence):

> What we're doing instead is um, we're um, we're, we're selling uh, rather the Foundation is, um recommending an allocation of tokens to the genesis block based on contributions to a Swiss non-profit, um and, there's a suggested um allocation amount, so one Bitcoin for 5,000 Tezos Tokens and we're going to sell them over the course of, uh or erm, rather have them, um, have them up for donation for the course of two weeks umm—

*See* Faisal Khan, *Interview with Kathleen breitman, CEO of Tezos*, Around the Coin, (June 16, 2017), https://aroundthecoin.com/interview/fintech-podcast-episode-138-interview-with-kathleen-breitman-ceo-of-tezos/ at 13:40 – 14:22. Similarly, in October 2017, Reuters reported that it asked Defendant Draper "how much he donated to the Tezos fundraiser, [and] he replied via email, "You mean how much I bought? A lot." *Reuters Tezos Special Report*, Rivas Dec., Ex. 5 at pg. 65. Defendant Draper not only invested in the Tezos ICO but also, through his venture capital firm (Draper Associates) invested $1.5 million in Defendant DLS itself, *id.* at page 63, gaining a minority interest in the company primarily responsible for creating the Tezos Tokens. *Tezos Transparency Memo*, Rivas Dec., Ex. 7 at pgs. 71-72. As such, Defendant Draper's view that he "bought" Tezos Tokens in connection with the

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Tezos ICO and did not "donate" to obtain a "recommendation" that he receive Tezos Tokens should carry significant weight.

Additionally, investors across the board viewed the Tezos ICO as an offer to purchase Tezos Tokens. *See, e.g.*, Stan Schroeder, *At $200 million, Tezos ICO is already the biggest ever, and it's still going strong*, Mashable (July 5, 2017), http://mashable.com/2017/07/05/tezos-ico-cryptocurrency-startup/#8V061VdqtZqh, excerpt attached to Rivas Dec., Ex. 8 at pg. 74 ("Tezos tokens, Tezzies or XTZs, can be purchased with both Bitcoin and Etherium.  And purchased they are: At the time of this writing, Tezos has raised . . . over $206 million . . ."); P.H. Madore, *ICO Analysis: Tezos*, Hacked (May 12, 2017), https://hacked.com/ico-analysis-tezos/, excerpt attached to Rivas Dec., Ex. 9 at pg. 76 ("[Tezos Tokens] will subsequently be distributed to the world through the sale of them at exchanges, one assumes, because in order to recoup at least their initial investment, investors will need to sell coins").  In sum, the fact that Defendants offered and sold Tezos Tokens while failing to register them with the SEC is irrefutable.

### C.     Tezos Tokens Are Securities

On July 25, 2017, the SEC published a report of its investigation concerning The DAO ICO, which involved DAO Tokens being offered in exchange for ETH investments.  *See* SEC, *The Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934; The DAO, Securities and Exchange Commission*, Release No. 81207 (July 25, 2017), https://www.sec.gov/litigation/investreport/34-81207.pdf (hereinafter the "DAO Report"), Rivas Dec., Ex. 4.  In this report the SEC "determined that DAO Tokens are securities under the Securities Act of 1933." *Id*. at pg. 42. Similarly to the Tezos' offer and sale of Tezos Tokens (XTZs) in exchange for BTC and ETH, The DAO "offered and sold approximately 1.15 billion DAO Tokens in exchange for 12 million Ether ('ETH') . . . ." *Id*. at pg. 43.  As discussed in detail below, applying the same analysis the SEC applied in the DAO Report provides a definitive conclusion that Tezos Tokens (or XTZ) are securities as well.

Under Section 2(a)(1), 15 U.S.C. § 77b(a)(1), of the Securities Act, the definition of a "security" includes an "investment contract."  "An investment contract is an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *DAO Report*, Rivas Dec., Ex. 4 at pg. 52 (citing *SEC v. Edwards*, 540 U.S. 389, 393

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1    (2004)).  "This definition 'embodies a flexible, rather than a static, principle that is capable of adaption

2    to meet the countless and variable schemes devised by those seeking to use others' money on the

3    promise of profits.'"  *Edwards*, 540 U.S. at 395 (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301

4    (1946)).[3]

5         Here, Defendants have attempted to portray the Tezos ICO as a mere "fundraiser," under which

6    "contributors" would "donate" BTC or ETH to the "foundation," and in exchange" Defendant Tezos

7    Foundation, would "recommend" that "contributors" receive Tezos Tokens that would be "allocated to

8    the Contributors according to their respective Contributions," when, or if, the Tezos blockchain were

9    created.  *Tezos Contribution Terms*, Rivas Dec., Ex. 2 at pgs. 30-32.  As the Supreme Court held in

10   *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975), when determining whether a

11   security has been offered and sold, "the emphasis should be on economic realities underlying a

12   transaction, and not the name appended thereto."  *See also SEC v. Glenn W. Turner Enters., Inc.*, 474

13   F.2d 476, 481 (9th Cir. 1973) ("'[I]n searching for the meaning and scope of the word 'security' in the

14   Act, form should be disregarded for substance and the emphasis should be on economic reality'")

15   (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)).

16        In other words, while the Tezos ICO's offer and sale of Tezos Tokens involved relatively new

17   and novel technologies relating to digital currencies and blockchains, which were then cloaked in

18   nudge-and-wink "fundraiser" terminology, it must be stressed that the "investment contract" language

19   in the Securities Act was designed to address precisely type of situation.  *See e.g.*, *Glenn W. Turner*

20   *Enters., Inc.*, 474 F.2d at 481 ("'[T]he reach of the [Securities] Act does not stop with the obvious or

21   commonplace.  Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if

22   it be proved as a matter of fact that they were widely offered or dealt in under terms or courses of

23   dealings of which established their character in commerce as 'investment contracts' . . . '") (quoting

24   *SEC v. Joiner Corp.*, 320 U.S. 344, 364 (1943)).

25        Accordingly, despite Defendants' claims that the Tezos ICO was merely a "fundraiser," the

26

27   ―――――――――――――――

     [3]  Similarly, in the *DAO Report*, the SEC concluded that the DAO Tokens were "investment contracts"

28   under Section 2(a)(1) of the Securities Act, and thus securities, by applying the *Howey* test as set forth
     in *Howey Co.*, 328 U.S. 293 (1946).  Rivas Dec., Ex. 4 at pg. 52.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   **economic realities** are that Plaintiff and Tezos ICO investors invested BTC and ETH in order to receive

2   Tezos Tokens, which they expected would be worth more than their BTC and ETH investments. *See,*

3   *e.g.*, alao, *Why I'm investing in the Tezos ICO despite my concerns*, Steemit (June 29, 2017),

4   https://steemit.com/cryptocurrency/@alao/why-im-investing-in-the-tezos-ico-despite-my-concerns,

5   excerpt attached to Rivas Dec., Ex. 10 at pg. 78 ("The Tezos ICO will go live on July 1st and despite

6   some reservations I'm going to invest in it."). Moreover, the Tezos ICO "contribution" terms contained

7   terms highly analogous to standard securities sales. Rivas Dec., Ex. 2. For example, the amount

8   invested had a direct correlation to the amount of Tezos Tokens promised. *Id*. at pgs. 30-31.

9   Specifically, per the Tezos "contribution" terms, "[o]ne XTZ shall be allocated for the amount (or

10   equivalent according to paragraph 25) of 0.0002 BTC." *Id*.   In other words, as explained in the

11   *Fundraiser FAQ*, "a contribution of one bitcoin will lead to a recommended allocation of five-thousand

12   tezzies (5,000 XTZ) . . . ." Rivas Dec., Ex. 3 at pg. 38. Additionally, the so-called "fundraiser" had a

13   minimum contribution amount—"[t]he minimum contribution is 0.1 BTC or its equivalent in other

14   means." *Id*. This is obviously akin to a minimum investment, and would be highly unusual for a

15   "fundraiser," which one would not ordinarily expect to have a minimum amount. As the SEC stated in

16   the *DAO Report*, "[w]hether or not a particular transaction involves the offer and sale of a security—

17   regardless of the terminology used—will depend on the facts and circumstances, including the

18   economic realities of the transaction. Rivas Dec., Ex. 4 at pgs. 58-59; *see also Salameh v. Tarsadia*

19   *Hotel*, 726 F.3d 1124, 1130 (9th Cir. 2013) (applying the economic realities rationale and stating

20   "substance governs, not name or label or form.") (citation omitted). Here, the "economic realities" are

21   that in exchange for BTC or ETH, participants in the Tezos ICO were conditioned to expect to receive

22   Tezos Tokens.

23         An application of the *Howey* test concludes that the Tezos Tokens are deemed securities under

24   the "investment contract" definition in Section 2(a)(1), 15 U.S.C. § 77b(a)(1), of the Securities Act.

25   *Howey Co.*, 328 U.S. at 298-99. Under the *Howey* test, "[a]n investment contract is (1) an investment

26   of money (2) in a common enterprise, evidenced by either vertical or horizontal pooling, [and] (3) with

27   the expectation of profits produced by the efforts of others." *SEC v. Alliance Leasing Corp.*, 28 Fed.

28   Appx. 648, 651 (9th Cir. 2002) (citing *Howey Co.*, 328 U.S. at 298-99). As detailed below, each

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

1  element of the *Howey* test is plainly met, the Tezos Tokens were securities, and thus, the Tezos ICO
2  was the offer and sale of unregistered securities.

3  **1.  Tezos ICO Participants Invested Money**

4  Investors in the Tezos ICO invested BTC and ETH with the expectation that they would receive
5  Tezos Tokens (XTZ).  Digital currencies such as BTC are deemed "money" for the purposes of the
6  *Howey* test.  *See, e.g.*, *SEC v. Shavers*, No. 4:13-cv-416, 2013 U.S. Dist. LEXIS 110018, at *4-5 (E.D.
7  Tex. Aug. 6, 2013) ("First, the Court must determine whether the BTCST investments constitute an
8  investment of money . . . Bitcoin is a currency or form of money, and investors wishing to invest in
9  BTCST provided an investment of money."); *see also Uselton v. Comm. Lovelace Motor Freight, Inc.*,
10  940 F.2d 564, 574 (10th Cir. 1991) ("[I]n spite of *Howey's* reference to an 'investment of money,' it is
11  well established that cash is not the only form of contribution or investment that will create an
12  investment contract").  Additionally, in the *DAO Report*, the SEC determined that the investment of
13  ETH constituted the investment of "money" under the *Howey* test.  Rivas Dec., Ex. 4 at pg. 52.  In
14  short, an investment of money under the *Howey* test includes digital currencies such as BTC and ETH.

15  Moreover, in the Ninth Circuit, the *Howey* test's "'investment of money' means only that the
16  investor must commit his assets to the enterprise in such a manner as to subject himself to financial
17  loss." *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976) (citing *El Khadem v. Equity Securities Corp.*,
18  494 F.2d 1224 (9th Cir. 1974), *cert. denied*, 419 U.S. 900 (1974)); *see also SEC v. U.S. Reservation
19  Bank & Tr.*, 289 Fed. Appx. 228, 231 (9th Cir. 2008) (unpublished) (stating that the instrument at issue
20  "should be characterized as a security because its economic risk required the protections provided to
21  investors by the federal securities laws").  As stated in the Tezos "contribution" terms, that Plaintiff
22  and the Class were required to agree to in order to invest in the Tezos ICO, "[t]he Contributor therefore
23  understands and accepts that the Contribution to TEZOS, and or the allocation, use and ownership of
24  XTZ, carries significant financial, regulatory and/or reputational risks (including the complete loss of
25  value (if any) of XTZ and attributed features." Rivas Dec., Ex. 2 at pg. 26.  Additionally, Tezos insiders
26  knew of the risk involved in investing in the Tezos ICO.  For example, just two days prior to the launch
27  of the Tezos ICO, Tezos' first advisor, Zooko, who began advising Tezos in January 2015, published
28  a blog post entitled "Why I'm advising Tezos." *See* zooko, *Why I'm advising Tezos*, Medium (June 29,

11

Case No. 3:17-cv-06829-RS

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

2017), https://medium.com/@zooko/why-im-advising-tezos-a8e04ec1d0d4, excerpt attached to Rivas Dec., Ex. 11.  Before discussing his reasoning on this topic, at the top of the page, the following disclaimer was written

> *But first, I want to emphasize that this does not constitute a recommendation that you participate in the upcoming Tezos crowdfunding.* People sometimes ask me for investment advice, but I never give investment advice. I always just say:
> - Never risk more money than you can afford to lose, on something new.
> - Never invest in something you don't understand

*Id*.

In short, to participate in the Tezos ICO and receive a promise for Tezos Tokens, "contributors" were required to invest financial assets in the form of BTC or ETH, and such investment subjected investors to the risk of financial loss.  *Tezos Contribution Terms*, Rivas Dec., Ex. 2 at pg. 26, 29.  Thus, the first element of the *Howey* test is plainly met.


## 2.    Tezos ICO Participants Invested in a Common Enterprise

"A common enterprise is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties."  *Glenn W. Turner Enters., Inc.*, 474 F.2d at 482 n.7 (citation omitted).  A "common enterprise [is] evidenced by either vertical or horizontal pooling . . . ."  *Alliance Leasing Corp.*, 28 Fed. Appx. at 651 (citing *Howey Co.*, 328 U.S. at 298-99).  In *Alliance*, the Ninth Circuit held that it was undisputed that "[a] common enterprise existed because Alliance pooled investors' interests and Alliance and the investors shared the profits."  *Id*.

Here, the Tezos ICO investments were pooled under the control of Defendant Tezos Foundation, and the success of the Tezos network—and thus the value and profits stemming from the value of Tezos Tokens—aligned the interests of Tezos ICO investors and Defendants.  *Tezos Overview*, Rivas Dec., Ex. 1.  Additionally, as stated in *SEC v. Eurobond Exch.*, 13 F.3d 1334, 1339 (9th Cir. 1994) (citing *SEC v. Goldfield Deep Mines Co.*, 758 F.2d 459, 463 (9th Cir. 1985)), "[a] common enterprise is a venture 'in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment.'"  Similarly, here, the successful launch and

operation of the Tezos blockchain—and the creation and subsequent value of the Tezos Tokens—was entirely dependent on the "efforts and success" of Defendants' actions.  *Tezos Contribution Terms*, Rivas Dec., Ex 2 at pg. 32 ("The Contributor understands and accepts that he does not have any influence over the governance of TEZOS.").

Similarly, as Defendants' have acknowledged, "approx. 10% of the total amount of XTZ" that is created if, or when, the Tezos blockchain launches, "shall be used to finance the purchase of Dynamic Ledger Solutions, Inc. by TEZOS."  Rivas Dec., Ex 2 at pg. 31.  Given that the Breitman Defendants are the owners and founders of Defendant DLS, Rivas Dec., Ex. 1 at pg. 11, it is obvious that a portion of any potential value ascribed to the Tezos Tokens was expected to be allocated for their personal benefits, in addition to Plaintiff's and the Class' benefit.  Accordingly, it is abundantly clear that the success of the Tezos blockchain network tied the interests of the investors to those of the Defendants, and was entirely reliant on Defendants' actions.  As such, the "common enterprise" element of the *Howey* test is plainly met.

### 3. Tezos ICO Participants Invested With the Expectation of Profits Produced By the Efforts of Others

In the Ninth Circuit, the third prong of the *Howey* test is "satisfied when 'the efforts made by those other than the investor are undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'"  *Murphy*, 626 F.2d at 641 (quoting *Glenn W. Turner Enters., Inc.*, 474 F.2d at 482); *see also SEC v. Rubera*, 350 F.3d 1084, 1091-92 (9th Cir. 2003) (setting forth same standard).

Here, Plaintiff and the Class invested in the Tezos ICO with the expectation that the value of the Tezos Tokens they expected to receive would be worth more than the BTC and ETH invested.  For example, as Defendant Draper stated in a letter he wrote to CoinTelegraph, an online media outlet focused on cryptocurrency news, in response to a critical article that had been written regarding Tezos and the nature of Defendant Draper's investment in the Tezos ICO, "They [the Breitman Defendants] made it clear to me and the other purchasers that the token would require time to develop.  If they are successful . . . maybe 5 or ten years down the road, my investors and I might get rich."  Cyril Gilson, *Tim Draper: There Was Nothing Secretive About Our Purchase of Tezos*, CoinTelegraph (Oct. 23,

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

2017), Rivas Dec., Ex. 13 at pg. 86.

Defendant Draper not only invested in the Tezos ICO to receive Tokens, but also through Draper Associates and gained a minority ownership stake in Defendant DLS, *Reuters Tezos Special Report*, Rivas Dec., Ex. 5 at page 71, the company responsible for creating the Tezos blockchain and the Tezos Tokens. *Tezos Transparency Memo*, Rivas Dec., Ex. 7 at pgs. 71-72. Defendant Draper is a seasoned venture capitalist and, in his opinion, the Tezos ICO was clearly an investment, and further, he viewed the potential future value of that investment as being based on whether the Breitman Defendants were "successful." Rivas Dec., Ex. 13 at pg. 86.

"Under *Howey*, courts conduct an objective inquiry into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'" *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009). Here, investors in the Tezos ICO were "led to expect" that the Tezos Tokens they were to receive would be worth more than the BTC and ETH invested. For example, on March 20, 2017, Defendant A. Breitman published a blog post discussing Tezos' "Philosophy and Values," in which he explained that one of Tezos' "Principles" was "Preserving the interest of token holders." Arthur Breitman, *Tezos: Philosophy and Values*, Medium (published March 20, 2017), Rivas Dec., Ex. 14 at pgs. 88-89. In Defendant A. Breitman's own words, "[g]enerally speaking, this means favoring decisions that tend toward increasing the value of the tokens." *Id.*; *see also Tezos Overview*, Rivas Dec., Ex. 1 at p. 8 (stating same). Similarly, Defendant K. Breitman stated in response to a question on whether she was concerned about potential speculative buying in China and its potential effect on Tezos,

> "We didn't do much marketing outside of the U.S. . . . We mostly have just been evangelizing about the technology. But certainly, there are a lot of people who are interested in the more speculative aspects. I think there's a lot of fervor and froth in the marketplace right now. That does make it a bit odd to launch something that's more community-based on some level when there's a lot of people who are just profit-seeking. I suppose I do worry but ultimately we're appealing to people's rational self-interest. So at the end of the day I hope that the proper incentives will align themselves"

Flux Podcast, *Kathleen Breitman – Tezos Unleashed*, RRE Ventures Perspectives (July 12, 2017), https://blog.rre.com/14-kathleen-breitman-tezos-unleashed-d0921294ec91, excerpt attached to Rivas Dec., Ex. 15 at pg. 92. Apparently, this "evangelizing" had the desired effect of "appealing to people's

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

rational self-interest," as Plaintiff and his fellow Tezos ICO investors were "led to expect" a return on their investment.  *Id*.  For example, Kevin Zhou, co-founder of Galois Capital, a fund focused on cryptocurrency trading, stated to Reuters regarding the Tezos ICO, "For me and for a lot of people this is an investment.  We are looking for a return."  *Reuters Tezos Special Report*, Rivas Dec., Ex. 5 at pg. 65; *see also* Picoloresearch, *Tezos: The market is expecting this smart contract to be the next Etherium*, Picolo Research (July 2, 2017), https://picoloresearch.com/upload/attachment/37391.pdf, excerpt attached to Rivas Dec., at Ex. 18 at pg. 99 ("In conclusion, Tezos represents a **speculative buying opportunity** for investors seeking exposure to a new (yet to be released) venture that holds a sufficient level of intellectual property . . . we believe that Tezos will attract substantial speculative market liquidity in the market once listed").  Accordingly, the third prong of the *Howey* test is also plainly met.

In sum, despite Defendants' ruse that the Tezos ICO was a mere "fundraiser" involving "donations" to a "foundation," *Tezos Overview*, Rivas Dec., Ex. 1 at pgs. 14-17, the Tezos Tokens are undoubtedly securities—specifically, "investment contracts"—under the *Howey* test, and the Tezos ICO thus constituted a sale of unregistered securities.  *See Warfield*, 569 F.3d at 1021 (finding the "charitable gift annuity contracts" issued by the "Mid–America Foundation" were securities under the *Howey* test).

### D.     Interstate Means Were Used to Offer and Sell the Tezos Tokens

The third and final element for establishing a violation of Section 5 of the Securities Act, and thus Section 12(a)(1), is easily established because Defendants used the Internet to offer and sell the Tezos Tokens. *Tezos Contribution Terms*, Rivas Dec., Ex. 2. *See, e.g.*, *SEC v. Abacus Int'l Holding Corp.*, No. 99-cv-2191, 2001 U.S. Dist. LEXIS 12635, at *6-7 (N.D. Cal. August 16, 2001) (holding that the "SEC plead a prima facie case of a §5 violation" where defendant "offered and sold securities to the public through the Internet, interstate commerce . . ."). Thus, "interstate means" were clearly used to accomplish the Tezos ICO.

### III.    PLAINTIFF AND THE CLASS ARE THREATENED WITH IRREPARABLE HARM

"Asset freeze injunctions require a showing by Plaintiff of 'a likelihood of dissipation of the claims assets, or other inability to recover monetary damages, if relief is not granted.'" *Datatech*

1  *Enters. LLC*, 2012 U.S. Dist. LEXIS 131711, at \*12 (citing *Johnson*, 572 F.3d at 1085).  Here, such a

2  likelihood plainly exists, as evidenced by Defendants'' own words and deeds.

3          It was reported over one month ago that Defendant Tezos Foundation had been "selling the

4  virtual currencies – lately about $10.2 million worth a week – and plan[ed] to invest the proceeds in a

5  diverse portfolio." *Reuters Tezos Special Report*, Rivas Dec., Ex. 5 at pg. 67.  Moreover, on October

6  18, 2017, the Breitman Defendants published a joint-letter online in which they state that "[i]n early

7  September we became aware that the president of the Tezos Foundation, Johann Gevers, engaged in an

8  attempt at self-dealing, misrepresenting to the council the value of a bonus he attempted to grant

9  himself."  ArthurB, *The Path Forward A Letter from Arthur & Kathleen Breitman to the Tezos

10  community*, Medium (Oct. 18, 2017), https://medium.com/@arthurb/the-path-forward-eb2e6f63be67,

11  excerpt attached to Rivas Dec., Ex. 16.  More recently, the CEO of Bitcoin Suisse AG, the broker that

12  assisted with the Tezos ICO, published a statement on November 13, 2017, in which he stated that the

13  cryptocurrencies invested during the Tezos ICO have been "to a minor extent hedged/liquidated against

14  various fiat currencies . . . ."  Niklas Nikolajsen, *Statement concerning the Tezos Crowd Contribution

15  and the Tezos Foundation*, Bitcoin Suisse (Nov. 13, 2017), https://www.bitcoinsuisse.ch/tezos-

16  statement/, Rivas Dec., Ex. 17.

17          The vagueness of this statement and various affirmations that cryptocurrencies invested during

18  the Tezos ICO have, to some extent, been liquidated support Plaintiff's concerns regarding the status

19  of the Class' investments, and are further aggravated by the heavily reported power struggle between

20  the Breitman Defendants and Gevers regarding control over the BTC and ETH invested during the

21  Tezos ICO.  Given the uncertainty surrounding the status of the proceeds of the Tezos ICO and

22  complete lack of transparency regarding how much has already been liquidated, where proceeds from

23  liquidation have gone, and how much of the initial investments are remaining, there is substantial risk

24  that Plaintiff and the Class will suffer irreparable harm from dissipation and misallocation of their

25  funds.  Certainly, the foregoing events clearly establish a likelihood that the remaining assets are likely

26  to be dissipated absent injunctive relief.  *See, e.g.*, *Innovation Ventures, LLC v. Pittsburgh Wholesale

27  Grocers, Inc.*, No. 12-cv5523, 2013 U.S. Dist. LEXIS 97767, at \*13-14 (N.D. Cal. July 12, 2013) ("[I]n

28  order to find a 'strong likelihood' of dissipation, district courts in our circuit have often pointed to

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1  evidence that suggests defendants are in the process of dissipating assets, or are strategizing to do so in

2  the future, when deciding whether to freeze assets").

3        Moreover, given the ease in which cryptocurrencies can be dissipated anywhere in the world—

4  effectively instantaneously—there is a particular concern here that Plaintiff's and the Class'

5  investments could vanish overnight.  *See id*. at *14 ("Courts in our circuit have also looked to whether

6  defendants have a particular capability or convenience in secreting assets."); *see also*, *Reebok Int'l Ltd.*

7  *v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989) (holding that the "international

8  aspect of the defendants" business supported inference of dissipation), *aff'd, Reebok*, 972 F.2d at 563;

9  *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236-37 (9th Cir. 1999) (affirming district

10 court's asset freeze and holding that defendants' use of a Cook Islands trust supported a finding of

11 likely dissipation).

12       As there is presently little to no transparency regarding the status of the BTC and ETH invested,

13 Plaintiff and the Class run the very real risk with each passing day that Defendants will dissipate the

14 rest of their investments, and consequently, their investments made may entirely cease to exist.

15 Accordingly, Plaintiff and the Class are likely to suffer irreparable harm absent injunctive relief.

16 **IV.**     **THE BALANCE OF THE EQUITIES FAVORS PLAINTIFF**

17       Here, no hardship to Defendants will occur as a result of the sought-after injunctive relief and

18 there is no question that the equities favor the entry of such relief.  Moreover, Plaintiff "seeks only

19 equitable relief as is necessary to preserve his rights to recover his own property."  *Kremen v. Cohen*,

20 No. 5:11-cv-5411, 2011 U.S. Dist. LEXIS 141273, at *19 (N.D. Cal. Dec. 7, 2011).  Further, absent

21 injunctive relief, Plaintiff and the Class may be unable to recover the equitable relief of rescission

22 sought.  *See, e.g.*, *SEC v. Bar Works Capital, LLC*, No. 17-cv-4396, 2017 U.S. Dist. LEXIS 170983, at

23 *19-20 (N.D. Cal. Oct. 16, 2017) ("The equities weigh in favor of granting the asset freeze. Without a

24 freeze, defrauded investors may not be able to recover moneys wrongfully obtained from them.").

25 **V.**     **THE PUBLIC INTEREST WILL BE SERVED BY AN INJUNCTION**

26       The grant of a preliminary injunction by the Court would be in the public interest here.  As

27 demonstrated above, public policy strongly supports preserving funds rightfully owned by Plaintiff and

28 the Class, as Defendants have clearly attempted to evade federal securities laws and deprive investors

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

of rights and protections provided thereunder.  Given that "[t]he registration requirements are the heart of the [Securities] Act," *Pinter*, 486 U.S. at 638, public policy clearly supports judicial intervention where parties brazenly skirt these requirements, as Defendants have done here.  The ultimate remedy sought here is the rescission of the investments made by Plaintiff and the Class, which were in the form of BTC and ETH.  As discussed, these assets here are easily transferred and could be dissipated quickly be Defendants.  *See* Section III, *supra*.  Accordingly, the grant of injunctive relief will preserve the assets at issue, and thereby serve the public interest.  *See e.g.*, *Datatech Enters. LLC*, 2012 U.S. Dist. LEXIS 131711, at *11 ("[t]he district court 'has the power to issue a preliminary injunction to preserve the status quo in order to protect the possibility of that equitable remedy") (citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order: Plaintiff seeks an order (i) preliminarily enjoining the Breitman Defendants from requesting or receiving funds from the investments collected during the Tezos ICO for the payment of legal fees involving this and related actions alleging Defendants unlawfully offered and sold unregistered securities during the Tezos ICO; (ii) preliminarily enjoining Defendants from making further transfers or dissipations of the investments collected during the Tezos ICO, or using such funds in any further purchases or transactions; (iii) requiring an accounting of the remaining funds and assets invested by Plaintiff and the Class; (iv) freezing Defendants' accounts holding the funds invested during the Tezos ICO; and (v) imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff and the Class, pending a determination by the Court on whether Tezos ICO investors are entitled to rescission of their BTC and ETH investments due to Defendants' violations of the federal securities laws.

Respectfully submitted,

Dated: December 4, 2017           **LEVI & KORSINSKY, LLP**

By:  */s/ Rosemary M. Rivas*
     Rosemary M. Rivas
     44 Montgomery Street, Suite 650
     San Francisco, CA 94104
     Telephone: (415) 291-2420
     Facsimile: (415) 484-1294

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

Eduard Korsinsky (to be admitted pro hac vice)
Email: ek@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiff Andrew Okusko*

19                                              Case No. 3:17-cv-06829-RS
PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION