Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Donald J. Enright (admitted *pro hac vice*)
Email: denright@zlk.com
**LEVI & KORSINSKY, LLP**
1101 30th St., NW, Ste. 115
Washington, DC 20007
Telephone: (202) 524-4292
Facsimile: (202) 333-2121

Eduard Korsinsky (to be admitted *pro hac vice*)
Email: ek@zlk.com
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiff Andrew Okusko*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW OKUSKO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DYNAMIC LEDGER SOLUTIONS, INC., THE TEZOS FOUNDATION,  KATHLEEN BREITMAN, ARTHUR BREITMAN, and TIMOTHY DRAPER, <br><br> Defendants. | Case No. 3:17-cv-06829-RS <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** <br><br> **[This motion will be subject to a motion for an order shortening time pursuant to L.R. 6-3.]** <br><br> Date: February 29, 2018 <br> Time: 1:30 p.m. <br> Judge: Hon. Richard Seeborg <br> Crtrm.: 3, 17th Floor |

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................... 1

PROCEDURAL BACKGROUND AND STATEMENT OF FACTS ................................... 1

ARGUMENT ................................................................................................................. 3

I.     EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE IN THESE
CIRCUMSTANCES ............................................................................................ 3

     A.    Courts Allow Expedited Discovery for Good Cause ......................................... 3

     B.    Good Cause Exists for a Grant of Expedited Discovery .................................... 4

          1.    Good Causes Exists to Investigate Defendant Foundation's
Jurisdictional Defenses .............................................................................. 4

          2.    Good Cause Exists to Investigate Whether There is a Need to Seek
Injunctive Relief ........................................................................................ 7

     C.    The Requested Expedited Discovery is Reasonable Considering the
Circumstances and Will Provide Minimal Burden on Defendants ................... 12

II.    THE PSLRA ALLOWS FOR DISCOVERY UNDER THESE CIRCUMSTANCES 15

CONCLUSION ............................................................................................................. 18

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Apple Inc. v. Samsung Elecs. Co.*,
　2011 U.S. Dist. LEXIS 53233 (N.D. Cal. May 18, 2011) .......................................................8

*Arista Music v. Radionomy, Inc.*,
　2016 U.S. Dist. LEXIS 74883 (N.D. Cal. June 8, 2016) ...................................................3, 7

*Bourassa v. Desrochers*,
　938 F.2d 1056 (9th Cir. 1991) ...................................................................................................5

*Coen Co. v. Pan Int'l, Ltd.*,
　2014 U.S. Dist. LEXIS 110027 (N.D. Cal. Aug. 8, 2014).........................................................12

*Dipple v. Odell*,
　870 F. Supp. 2d 386 (E.D. Pa. 2012) ......................................................................................16

*Gerbino v. Sprint Nextel Corp.*,
　12-2722-CM, 2013 WL 12129957 (D. Kan. Apr. 19, 2013) ....................................................16

*Gsi Tech., Inc. v. United Memories, Inc.*,
　2013 U.S. Dist. LEXIS 50493 (N.D. Cal. Apr. 8, 2013) ..........................................................12

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*
　328 F.3d 1122 (9th Cir. 2003) ...................................................................................................7

*Hufnagle v. RINO Int'l Corp.*,
　2011 U.S. Dist. LEXIS 72078 (C.D. Cal. July 6, 2011) ...........................................................16

*Huntington Ingalls, Inc. v. Doe*,
　2012 U.S. Dist. LEXIS 166710 (N.D. Cal. Nov. 21, 2012)........................................................4

*In re Am. Funds Sec. Litig.*,
　493 F. Supp. 2d 1103 (C.D. Cal. 2007) ...................................................................................15

*In re Asyst Techs., Inc.*,
　2008 U.S. Dist. LEXIS 119921 (N.D. Cal. Apr. 3, 2008) .........................................................16

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
　No. 05-md-1725, 2007 WL 518626 (E.D. Mich. Feb. 15, 2007) .......................................16, 17

*In re Finisar Corp. Derivative Litig.*,
　2012 U.S. Dist. LEXIS 23384 (N.D. Cal. Feb. 24, 2012) .........................................................16

*In re Grand Casinos Sec. Litig.*,
　988 F. Supp. 1270 (D. Minn. 1997)..........................................................................................16

*In re Royal Ahold N.V. Securities & ERISA Litigation*,
　319 F. Supp. 2d 634 (D. Md. 2004)..........................................................................................17

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

*Interserve, Inc. v. Fusion Garage PTE, Ltd.*,
    2010 U.S. Dist. LEXIS 6395 (N.D. Cal. Jan. 7, 2010) ...................................... 8

*Kremen v. Cohen*,
    2011 U.S. Dist. LEXIS 141273 (N.D. Cal. Dec. 7, 2011) ................................... 3

*Laub v. United States DOI*,
    342 F.3d 1080 (9th Cir. 2003) ............................................................................ 7

*Lernout & Hauspie Sec. Litig.*,
    214 F. Supp. 2d 100 (D. Mass. 2002) .............................................................. 16

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
    2015 U.S. Dist. LEXIS 72641 (N.D. Cal. June 4, 2015) ................................... 3

*Medical Imaging Centers of America, Inc. v. Lichtenstein*,
    917 F. Supp. 717 (S.D. Cal. 1996) ................................................................... 16

*Mehr v. Fed'n Internationale de Football Ass'n*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ............................................................ 7

*Ryan v. Walton*,
    No. 1:10-cv-00145-RMC (D.D.C.) ................................................................... 17

*SEC v. Jeffrey Alan Lowrance & First Capital S&L, Ltd.*,
    2012 U.S. Dist. LEXIS 93129 (N.D. Cal. July 5, 2012) ................................... 6

*SEC v. Johnson*,
    2001 U.S. Dist. LEXIS 27403 (S.D. Fla. Dec. 27, 2001) ............................... 17

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002) ............................................................. 3, 4, 8

*Sharma v. Freedom Inv. Club, Ltd.*,
    2010 U.S. Dist. LEXIS 113349 (N.D. Cal. Oct. 15, 2010) ............................... 4

*Strike 3 Holdings, LLC v. Doe*,
    2018 U.S. Dist. LEXIS 6080 (N.D. Cal. Jan. 11, 2018) ................................... 3

*UMG Recordings, Inc. v. Doe*,
    2008 U.S. Dist. LEXIS 79087 (N.D. Cal. Sept. 3, 2008) ................................. 3

*Vacold LLC v. Cerami*,
    2001 U.S. Dist. LEXIS 1589 (S.D.N.Y. Feb. 16, 2011) ................................. 17

**Statutes**

15 U.S.C. § 77v(a) ...................................................................................................... 7

15 U.S.C. § 77z-1(b)(1) ...................................................................................... 1, 15, 16

15 USCS §§ 77a et seq. ............................................................................................... 15

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 1

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

Fed. R. Civ. P. 26(b)(2)...................................................................................................................3

Fed. R. Civ. P. 26(d) ......................................................................................................................3

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

**INTRODUCTION**

Plaintiff Andrew Okusko ("Plaintiff"), who has brought the present action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public investors in the Tezos initial coin offering (the "Tezos ICO") that took place July 1, 2017 through July 14, 2017 (the "Proposed Class"), respectfully submits this memorandum of points and authorities in support of his motion requesting that the Court issue an order permitting expedited discovery and a lift of the automatic discovery stay under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1(b)(1). Plaintiff seeks limited, particularized, discovery (the "Motion for Expedited Discovery") from Defendant Dynamic Ledger Solutions, Inc. ("DLS") and Defendant Tezos Foundation (the "Foundation") to (1) further investigate and develop a record of facts pertinent to the Foundation's jurisdictional defenses, and (2) further investigate and develop a record of facts concerning the safekeeping and status of the Bitcoin ("BTC") and Ether ("ETH") raised in connection with the Tezos ICO (the "ICO Proceeds"), so as to determine whether the Proposed Class' investments are secure and if there is a necessity for Plaintiff to move for injunctive relief.

**PROCEDURAL BACKGROUND AND STATEMENT OF FACTS**

On November 28, 2017, Plaintiff initiated this action by filing a complaint alleging violations of the federal securities laws stemming from Defendants' offer and sale of unregistered securities in connection with the Tezos ICO (the "Complaint"), ECF No. 1.  On December 4, 2017, Plaintiff filed his Motion for Preliminary Injunction (the "PI Motion"), ECF No. 9.  The PI Motion sought an order preliminarily enjoining Defendants DLS, the Foundation, Kathleen Breitman ("K. Breitman"), Arthur Breitman ("A. Breitman," and together with K. Breitman, the "Breitmans," and collectively with DLS, the Tezos Foundation, and K. Breitman, "Defendants"),[1] from transferring or dissipating assets, the ICO Proceeds, and any other assets that Defendants have since purchased with the ICO Proceeds.  The hearing on the PI Motion was scheduled to take place on January 11, 2018 (the "PI Hearing").

On December 13, 2017, a complaint based on the same facts and circumstances as the instant action was filed, initiating *Macdonald v. Dynamic Ledger Solutions, Inc., et al*, 3:17-cv-7095-RS (N.D.

---

[1] Plaintiff's Complaint also names Timothy Draper ("Draper") as a defendant, ECF No. 1, however, Plaintiff did not seek injunctive relief against Draper in his PI Motion, ECF No. 9.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

Cal.) (the "MacDonald Action").   The following day, an Ex Parte Application for Temporary Restraining Order (the "TRO Application"), MacDonald Action, ECF No. 8, was filed requesting substantially similar relief as Plaintiff's PI Motion.  The Court thereafter scheduled and held a hearing on the TRO Application on December 19, 2017 (the "TRO Hearing").

Following the TRO Hearing, this Court denied the TRO Application.  In the Order Denying Application for Temporary Restraining Order, MacDonald Action, ECF No. 35, this Court held that while "[t]he lack of updates regarding the project, infighting amongst Tezos leadership, the firing of an auditor, and the delayed launch of the project are all worrisome," such facts were insufficient to provide "strong evidence of looting."  *Id*. at pg. 6.  Additionally, this Court held that Plaintiff MacDonald's concerns regarding dissipation rose "to little more than speculation" and were "not sufficient to support a finding of irreparable harm and therefore do not justify the 'extraordinary remedy' of injunctive relief."  *Id*. at pgs. 6-7.

Due to (1) the agreement Plaintiff was able to reach with Defendants regarding waivers of service,[2] (2) this Court's reasoning for denying the TRO Application, and (3) the fact that the TRO Application contained substantially similar arguments as Plaintiff's PI Motion and was based on the same general public record,  Plaintiff determined that it was in the best interests of all parties involved to forego the PI Hearing and withdraw his PI Motion without prejudice in favor of developing a more complete evidentiary record.  Accordingly, following the TRO Hearing, Plaintiff's counsel conferred with counsel for the Foundation and counsel for DLS regarding potential limited expedited discovery. In addition to the numerous telephone conferences on this matter Plaintiff's counsel conducted with DLS' and the Foundation's counsel, counsel for Plaintiff also provided Defendants' counsel with a formal letter setting forth a proposed scope of production on January 22, 2018 (the "Proposed Production Letter"), attached as Exhibit 1 to the Declaration of Donald J. Enright in Support of Plaintiff's Motion for Expedited Discovery ("Enright Dec.") filed concurrently herewith.   On January 24, 2018, counsel for the Foundation responded (the "Response Letter"), Enright Dec., Ex. 2, and reaffirmed Defendants opposition to Plaintiff's requested limited discovery.  Ultimately, the parties

---

[2] The substance of the agreement reached between Plaintiff and Defendants is contained in Plaintiff's Notice of Withdrawal of Motion for Preliminary Injunction, ECF No. 23.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

1    were unable to reach an agreement on the issues addressed by the instant Motion.

2           Due to the foregoing sequence of events, Plaintiff's desire to ensure expediency in the progress

3    of this litigation by factually exploring the Foundation's jurisdictional defenses, and aim of establishing

4    a more complete record, Plaintiff submits this Motion for Expedited Discovery

5                                            **ARGUMENT**

6    **I.    EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE IN THESE**

7    **        CIRCUMSTANCES**

8           **A.    Courts Allow Expedited Discovery for Good Cause**

9           Discovery under the Federal Rules of Civil Procedure does not commence until after the parties

10   have met and conferred pursuant to Rule 26(f).  *See* Fed. R. Civ. P. 26(d).  Nevertheless, a court may,

11   in the exercise of its broad discretion, alter the timing, sequence, and volume of discovery.  *See, e.g.*,

12   Fed. R. Civ. P. 26(b)(2), 26(d).  "In fashioning discovery orders under Rule 26(d), the district courts

13   wield broad discretion, as they do when managing any aspect of discovery."  *UMG Recordings, Inc. v.*

14   *Doe*, 2008 U.S. Dist. LEXIS 79087, *9 (N.D. Cal. Sept. 3, 2008).

15          "[D]istrict courts may grant requests for expedited discovery on a showing of 'good cause.'"

16   *Arista Music v. Radionomy, Inc.*, 2016 U.S. Dist. LEXIS 74883, at *7 (N.D. Cal. June 8, 2016) (citing

17   *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).  In this District,

18   courts consider the following factors in determining whether good cause has been shown: "(1) whether

19   a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for

20   requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and

21   (5) how far in advance of the typical discovery process the request was made."  *Lilith Games (Shanghai)*

22   *Co. v. uCool, Inc.*, 2015 U.S. Dist. LEXIS 72641, at *7 (N.D. Cal. June 4, 2015).  "Good cause may be

23   found where the need for expedited discovery, in consideration of the administration of justice,

24   outweighs the prejudice of the responding party."  *Strike 3 Holdings, LLC v. Doe*, 2018 U.S. Dist.

25   LEXIS 6080, at *2 (N.D. Cal. Jan. 11, 2018) (quotation omitted); *see also Kremen v. Cohen*, 2011 U.S.

26   Dist. LEXIS 141273, at *27 (N.D. Cal. Dec. 7, 2011) ("A court may grant a motion for expedited

27   discovery upon a showing of good cause, [and] balancing the benefit to the requesting party against the

28   possible prejudice or hardship on the responding party.").  In connection with the court's determination

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

as to whether "good cause" exists, "[t]he court must perform this evaluation in light of 'the entirety of the record . . . and [examine] the reasonableness of the request in light of all surrounding the circumstances.'" *Huntington Ingalls, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 166710, at *5 (N.D. Cal. Nov. 21, 2012) (quoting *Semitool, Inc.*, 208 F.R.D. at 276).

Here, expedited discovery is warranted as Plaintiff requires such to (1) further investigate and develop a record of facts pertinent to the Foundation's jurisdictional defenses, and (2) further investigate and develop a record of facts concerning the safekeeping and status of the ICO Proceeds, so as to whether there is a necessity for Plaintiff to seek injunctive relief. Additionally, as detailed *infra*, the specific discovery requested is objectively reasonable considering the facts and circumstances at hand. As such, the Court should permit Plaintiff to take limited expedited discovery from DLS and the Foundation.

**B.    Good Cause Exists for a Grant of Expedited Discovery**

**1.    Good Causes Exists to Investigate Defendant Foundation's Jurisdictional Defenses**

Based on Plaintiff's counsel's discussions with counsel for Defendants, the Foundation's responsive filings in the MacDonald Action, and the TRO Hearing, the Foundation has indicated that it intends to raise a jurisdictional defense and claim that this Court lacks personal jurisdiction over it. Despite the Foundation's contention on this issue, Plaintiff believes that there is sufficient evidence to establish that this Court does have personal jurisdiction over the Foundation.

First, there is clear evidence that the Tezos ICO primarily targeted U.S. investors. Specifically, K. Breitman, the "co-founder and CEO of @tezos," specifically stated as such in an interview: "**We didn't do much marketing outside of the U.S.**" (emphasis added). Flux Podcast, *Kathleen Breitman – Tezos Unleashed*, RRE Ventures Perspectives (July 12, 2017), Enright Dec., Ex. 3. Due to Defendants offering and selling of unregistered securities in violation of the federal securities laws during the Tezos ICO, and the fact that their primary intention was to market the Tezos ICO to, and solicit investments from, U.S. persons, the operators of the Tezos ICO, including the Foundation, subjected themselves to personal jurisdiction in the United States and this District. *See, e.g.*, *Sharma v. Freedom Inv. Club, Ltd.*, 2010 U.S. Dist. LEXIS 113349, at *3 (N.D. Cal. Oct. 15, 2010) ("[F]oreign

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

defendants are subject to personal jurisdiction in any federal court, so long as there are minimum contacts with the United States.") (citing *Bourassa v. Desrochers*, 938 F.2d 1056, 1058 (9th Cir. 1991)).

Second, it appears clear that DLS and the Breitmans ran the Tezos ICO from within this District. As explicitly stated by the President of the Tezos Foundation when discussing the Breitmans and DLS, both located in this District, "[t]hey control the foundation's domains, websites and email servers, so the foundation has no control or confidentiality in its own communications."  Anna Irrera, *et al.*, *Special Report: Backroom battle imperils $230 million cryptocurrency venture*, Thomson Reuters (Oct. 18, 2017), Enright Dec., Ex. 4.  Accordingly, Plaintiff believes that this Court has personal jurisdiction over the Foundation because, on behalf of the Foundation, including by use of the Foundation's "websites," DLS and the Breitmans marketed and conducted the Tezos ICO from within this District.

Third, the Foundation was actively involved in the offer and sale of the Tezos Tokens during the Tezos ICO.  For example, the Foundation's website, www.tezos.ch, contained a "Fundraiser FAQ" which included a nine-point step-by-step guide detailing how investors could purchase Tezos Tokens during the Tezos ICO.  *See* Tezos Foundation, *Fundraiser FAQ*, Enright Dec., Ex. 5.   Moreover, this FAQ page also had two embedded YouTube instructional video guides detailing different methods on how to invest in the Tezos ICO.[3]  *Id.*  The host of the first of these videos began the video by stating: "Hello, this is Ross Kenyon.  I am the Community Manager with the Tezos Foundation."  *Id.*  Not only did an employee of the Foundation make instructional videos on how to invest in the Tezos ICO, but the Foundation thereafter hosted embedded copies of such videos on its website.  *Id.*  Accordingly, the Foundation clearly had substantial participation in marketing and conducting the Tezos ICO. Moreover, Defendants have repeatedly stressed that the Foundation ran the Tezos ICO.  *See, e.g.*, *Tezos and Tezos Foundation Overview Document*, Enright Dec., Ex. 6 at pg. 8 ("The Switzerland-based Tezos Foundation will oversee a fundraiser on July 1, 2017").  The foregoing actions and statements plainly evidence the fact that the Foundation actively solicited investors and participated in the offer of Tezos Tokens in the United States during the Tezos ICO, thus subjecting it to personal jurisdiction in this District.  *See, e.g.*, *SEC v. Jeffrey Alan Lowrance & First Capital S&L, Ltd.*, 2012 U.S. Dist. LEXIS

---

[3] The instructional videos are available at, https://www.tezos.ch/pages/fundraiser-faq.html#fundraiser-faq.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

93129, at *5 (N.D. Cal. July 5, 2012)  ("Plaintiff alleges that Defendants solicited approximately $21 million from hundreds of investors, including investors in California.  The means of solicitation included the First Capital website, cold calls, and mass mailings.  The solicitations constitute purposeful direction, and the litigation arose out of that conduct.  Accordingly, the court may exercise personal jurisdiction over the Defendants in this case.").

Fourth, in return for investments during the Tezos ICO, Plaintiff and the Proposed Class received "Tezos Wallets."  The Tezos Wallets were meant to evidence how many Tezos Tokens each investor was to receive if, or when, the Tezos blockchain was created.  The first instructional video on the Foundation's website included an example of what a Tezos Wallet looks like:[4]



Tezos Fundraiser Video Walkthrough

This demonstrates that investors in the Tezos ICO purchased and received Tezos Wallets directly from the Foundation.  Specifically, the support email in the Tezos Wallet is "contact@tezos.ch," which is an email hosted on the Foundation's website.  Additionally, the Tezos Wallet stated, with respect to the public key hash for the Tezos Wallet: "It's OK to share it with the Tezos foundation."  The promise of Tezos Tokens that Plaintiff and the Proposed Class received in

---

[4] *Fundraiser FAQ*, Enright Dec., Ex. 5; *supra* note 3.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

exchange for their investments during the Tezos ICO clearly exhibits that not only was the Foundation involved in the offer of Tezos Tokens, but also effectuated the delivery of the Tezos Wallets to investors.  By engaging in the sale of Tezos Tokens—which Plaintiff maintains were unregistered securities—in the United States in general and California in particular, the Foundation has purposefully availed itself to personal jurisdiction in this District.  *See* 15 U.S.C. § 77v(a) ("The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under [the Securities Act of 1933]").

Based on the foregoing, Plaintiff believes that this Court has personal jurisdiction over the Foundation.  However, due to the Foundation's insistence that there is a dispute relating to jurisdiction and indication that it will raise jurisdictional defenses, Plaintiff is requesting limited expedited discovery to investigate this issue further, so as to fully address concerns regarding jurisdiction this Court raised during the TRO Hearing and to timely resolve any jurisdictional disputes in pursuit of judicial efficiency.  This District routinely grants such requests, for example, as this Court stated in *Music*,

> District courts may permit limited discovery to determine whether personal jurisdiction exists.  *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1053 (N.D. Cal. 2015).  When the parties dispute pertinent facts bearing on the question or jurisdiction or where 'a more satisfactory showing of the facts is necessary,' district courts should ordinarily grant requests for limited discovery. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003).  While district court discretion in this area is broad, district courts abuse their discretion by denying discovery "[w]here further discovery on an issue 'might well' demonstrate facts sufficient to constitute a basis for jurisdiction" *Mehr*, 115 F. Supp. 3d at 1054 (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd*. 328 F.3d 1122, 1135 (9th Cir. 2003)).

2016 U.S. Dist. LEXIS 74883, at *6-7.

In sum, because the Foundation has maintained its intention to dispute this Court's jurisdiction over it, Plaintiff respectfully requests expedited discovery narrowly tailored to decisively and timely resolve the issue.

### 2.    Good Cause Exists to Investigate Whether There is a Need to Seek Injunctive Relief

This District has found good cause to exist where limited expedited discovery is sought to

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

determine whether to seek injunctive relief. *See Interserve, Inc. v. Fusion Garage PTE, Ltd.*, 2010 U.S. Dist. LEXIS 6395, at *7 (N.D. Cal. Jan. 7, 2010) ("[t]he court finds good cause. Expedited discovery will allow plaintiff to determine whether to seek an early injunction."); *see also Apple Inc. v. Samsung Elecs. Co.*, 2011 U.S. Dist. LEXIS 53233, at *8 (N.D. Cal. May 18, 2011) ("[E]xpedited discovery would allow the Court to address any request for preliminary injunctive relief at the outset of the case, thereby providing a measure of clarity to the parties early in the proceeding and facilitating effective case management," which "weighs in favor of" the requested expedited discovery.") (citing *Semitool*, 208 F.R.D. at 276-77).

In addition to the "[l]ack of updates regarding the project, the infighting amongst Tezos leadership, the firing of an auditor, and the delayed launch of the project" that this Court found concerning,[5] recent developments have only served to further compound concerns relating to Plaintiff's and the Proposed Class' investments. For example, the infighting amongst Tezos' leadership continues. *See, e.g.*, Matthew Allen, *Gevers plans to reboot embattled Tezos Foundation*, Swissinfo (Jan. 19, 2018), Enright Dec., Ex. 7 (an article reporting that Johann Gevers ("Gevers"), the president of the Foundation, delivered "a thinly-veiled attack on the Breitmans' leadership" at the Crypto Finance Conference in St. Moritz that took place January 17-19, 2018).

Additionally, the Foundation is currently in the process of recruiting a new board member to fill one of the three available seats following the resignation of Guido Schmitz-Krummacher in December 2017. Enright Dec., Ex 7. On December 12, 2017, Reuters reported that, "[u]nder the foundation's bylaws, Gevers gets to nominate Schmitz-Krummacher's replacement," and "[i]f the third board member votes against the candidate, Gevers can cast an overriding vote." Steve Stecklow, *et al*, *Tezos director resigns, sowing more uncertainty at crypto startup*, Reuters (Dec. 12, 2017), Enright Dec., Ex 8. Evidently, Gevers has the authority to singlehandedly replace the third member of the Foundation's board. Moreover, as reported by Bitcoin.com on January 22, 2017, Gevers "unilaterally vetoed all of" the board applicants that Diego Pons ("Pons"), the other remaining member of the Foundation's board, submitted. *See* Kai Sedgwick, *Senior Figures Class as the Tezos ICO War Heats*

---

[5] MacDonald Action, TRO Order, ECF No. 35 at pg. 6.

*Up*, Bitcoin.com (Jan. 22, 2018), Enright Dec., Ex. 9.  The article included an email that applicants received from Pons, which stated:

> ***[Tezos] Your Candidacy has been vetoed***
>
> *All, You were all nominated by me as candidates to the board of the Tezos Foundation for the contributions I believe you could have brought to this project.*
>
> *I profoundly regret to inform you that Johann Gevers has vetoed all your candidacies because you are not Swiss residents, are not "compatible with the Swiss mentality", "are all already linked to the Breitmans" and because your skills are not required in the Tezos board.  The board has decided per a vote (1 vs 1) that only one new board member will be appointed, which for technical reasons restricts the candidates to only Swiss residents. Thereafter, you will not be interviewed by the board.*
>
> *Our PR firm will release an official statement explaining the situation in the upcoming weeks. With my deepest apologies for the trouble I have caused you. Diego*

*Id.*

The foregoing events and the control Gevers wields over the Foundation and Plaintiff's and the Proposed Class' investments is particularly concerning given the fact that Gevers has a well-documented history of financial mismanagement.  Specifically, on January 15, 2018, a Google document was created by investors and interested persons following developments surrounding Tezos. *See Johann Gevers – Background and History (English)*, (hereinafter, the "Gevers Report") Enright Dec., Ex 10.  This document delves "into the professional life of Mr. Johann Lothar Gevers in order to shed some light on how the Tezos Foundation has ended up in such an awful state with him at the helm." *Id.* at pg. 1.  The document is extraordinarily well researched and paints a very clear picture that Gevers should not be trusted with control over and management of the ICO Proceeds.  For example, the Gevers Report states:

> As [Gevers] claims extensive achievements in both academic and professionsl experience spanning accounting, investing, consulting, auditing and serial entrepreneurship, one might expect the organizations that Mr. Gevers helms as President to be successful, but his history suggests something entirely different.

*Id.*

Indeed, the Gevers Report concludes that research into Gevers' past ventures reveals that "the majority of these companies end up in dissolution, bankruptcy or seem to disappear without a trace." *Id.*  The Gevers Report thereafter relays information regarding at least five ventures Gevers ran that

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

had gone bankrupt or were dissolved, a series of ventures that appear to have not even existed, and Gevers' personal bankruptcy in 2010.  *Id*. at pgs. 2-11.  With respect to Gevers' professional history, the Gevers Report provides a graphical representation of such and concludes that "[t]he number of failures that Mr. Gevers has launched is both impressive and shocking for someone allegedly qualified in matters of accounting, law and business."  *Id*. at pg. 11-12.  The Gevers Report additionally includes results into an investigation into Gevers' personal and professional relationships that "reveals some possibly disturbing ethical conflicts of interest."  *Id*. at 13-16.

The most recent of Gevers' professional failures occurred in December 2017, when Monetas, a company that Gevers founded and was the CEO of, was "declared bankrupt [] by a court in Zug, [Switzerland]."  Swissinfo.ch and agencies, *Embattled start-up Monetas declared bankrupt*, Swissinfo (Dec. 12, 2017) (hereinafter "Swissinfo Monetas Article"), Enright Dec., Ex. 11.  Despite the fact that Monetas was less than two weeks away from being declared bankrupt, on November 30, 2017, Gevers sent a letter to Monetas' investors stating that the company had obtained its "first commercial customer" and entered into a contract that "runs until mid-2018."  *See* Johann Gevers, *Investor Update – November 2017*, Monetas (Nov. 30, 2017), Enright Dec., Ex. 12.  Gevers further stated that "it's fantastic to finally be earning our first commercial revenues after years of building the Monetas platform."  *Id*.  As stated by Swissinfo, "[i]n this letter to investors on November 30, Gevers insisted things were improving for Monetas, but the company went bust weeks later."  Swissinfo Monetas Article, Enright Dec., Ex. 10.

/ / /

/ / /

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Gevers has similarly made numerous declarations that progress is being made on the Tezos project, and investors need only be patient.  For example, on January 19, 2017, Gevers tweeted the following:

 **Johann Gevers**
@johanngevers



Now that we have regained the ability to act, the Tezos Foundation is building a world-class team to execute its mission. We are recruiting proven achievers in three categories: 1. board 2. advisors 3. executive team. Complemented by top-tier professional service providers.

4:54 AM - 19 Jan 2018

Recent events surrounding Monetas, as well as research revealing Gevers' history of financial mismanagement, raise serious questions as to Gevers' credibility and competency to lead the Foundation and manage/safeguard the ICO Proceeds.  As such, Gevers' assurances carry little weight. Such assurances have failed to assuage Plaintiff's and the Proposed Class' concerns regarding the status of their investments.  Gevers' lack of transparency regarding the dire straits Monetas was in, statements that Monetas' future was actually looking bright a mere two weeks prior to the company being declared bankrupt, apparent mismanagement of Monetas, as well as numerous other ventures, that led to their respective bankruptcies or dissolutions, all raise serious concerns as to: the truthfulness of Gevers' public statements regarding the status of the Tezos project and the safety of the ICO Proceeds; his ability to single-handedly appoint the Foundation's third board member; and his competency to responsibly manage and safeguard Plaintiff's and the Proposed Class' investments pending resolution of this litigation.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

Accordingly, Plaintiff requests limited expedited discovery to further investigate the status of the ICO Proceeds, including as it relates to how the ICO Proceeds have been spent to date, the safeguards in place, and the identities of persons who have, or had, access to or control over the ICO Proceeds.

Moreover, during the TRO Hearing, Defendants conceded that a large portion of the proceeds from the Tezos ICO have already been converted to fiat currency, thereby making proper rescission very difficult, if not impossible. MacDonald Action, ECF No. 45. As such, it is reasonable to infer that further conversions and dissipation of the ICO Proceeds may be inevitable unless injunctive relief is obtained.

In sum, Plaintiff seeks to use the foregoing discovery to investigate the numerous objectively valid concerns surrounding the status of the ICO Proceeds, further develop the evidentiary record, and determine whether there is a need to pursue injunction relief. Indeed, courts in this District have permitted such requests following the denial of an application for TRO to enable parties to determine whether preliminary injunctive relief is in fact necessary. For example, in *Gsi Tech., Inc. v. United Memories, Inc.*, after the court denied a requested TRO because the court was "not convinced [that] 'immediate and irreparable injury'" would occur absent a grant of the TRO, the court found "good cause" for expedited discovery as "[t]argeted discovery will allow the court to determine whether a preliminary injunction is in fact warranted." 2013 U.S. Dist. LEXIS 50493, at *4 (N.D. Cal. Apr. 8, 2013). The court further held that such, "[l]imited, narrowly tailored discovery on an expedited schedule [would] not unfairly prejudice" the defendant. *Id.*; *see also Coen Co. v. Pan Int'l, Ltd.*, 2014 U.S. Dist. LEXIS 110027, at *16 (N.D. Cal. Aug. 8, 2014) (denying a TRO application, granting a request for expedited discovery, and finding "good cause" where defendants' "complicated organizational nature . . . appear[ed] to be obstructing Plaintiff's efforts to forestall an imminent harm"). Accordingly, "good cause" exists and this Court should permit Plaintiff to take limited expedited discovery from DLS and the Foundation.

**C.    The Requested Expedited Discovery is Reasonable Considering the Circumstances and Will Provide Minimal Burden on Defendants**

As noted *supra*, Plaintiff provided the Proposed Production Letter, Enright Dec., Ex. 1, to

12                                Case No. 3:17-cv-06829-RS

counsel for Defendants on January 22, 2018.  The Proposed Production Letter included 9 categories of production and requested depositions from one DLS representative and one Foundation Board Member. All of Plaintiff's requests are directly relevant to (1) further investigating and developing a record of facts pertinent to the Foundation's jurisdictional defenses, and (2) further investigating and developing a record of facts concerning the safekeeping and status of the ICO Proceeds, so as to determine whether there is necessity for Plaintiff seek injunctive relief.  The 9 categories of information and the depositions requested is as follows:

1. All communications and records, including without limitation, minutes of DLS's and the Foundation's Board of Directors, and documents from and including June 1, 2017 to and including February 22, 2018, the proposed production completion date (the "Relevant Time Period") concerning the formation of DLS and the Foundation.

2. All communications, records and documents from the Relevant Time Period concerning DLS's capital and governance structure.

3. All communications, records and documents from the Relevant Time Period concerning the operation and management of the Foundation's website, tezos.ch, including the identities of persons who were responsible for the posting and curating of content on the Foundation's website relating to the Tezos ICO.

4. All communications, records and documents from the Relevant Time Period concerning the Foundation's employees and affiliates responsible for conducting the Tezos ICO, including as relates to the organizational and reporting structure for employees such as Ross Kenyon, the "Community Manager for the Tezos Foundation."

5. All communications, records and documents from the Relevant Time Period concerning the Foundation's governance structure, including as relates to the process and procedures for the nomination and appointment of the Foundation's board members.

6. All communications, records and documents from the Relevant Time Period concerning the current status of the ICO Proceeds, security measures taken to safeguard the ICO Proceeds, and the decision-making process that led to such security measures, including as relates to the decision to grant Bitcoin Suisse AG co-signatory authority on transactions involving the

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

ICO Proceeds.

7. All communications, records and documents from the Relevant Time Period concerning the liquidation, dissipation, transfer, or use of any of the ICO Proceeds, including such actions taken by DLS' and the Foundation's employees, board members, or owners, as well as the Breitmans, including their family members, friends, or affiliates.

8. All public digital currency wallet addresses – that were or are under the control of DLS or the Foundation, including any of their employees, board members, or owners, as well as addresses for such wallets that are or have been under the control of the Breitmans, including any of their family members, friends, or affiliates – that have held at any point during the Relevant Time Period any portion of the ICO Proceeds, or proceeds from, the sale, liquidation, dissipation, or transfer of the ICO Proceeds.

9. All communications, records and documents concerning DLS' and the Foundation's activities, presence, assets or residence in the State of California.

10. Depositions of at least one DLS representative and one Foundation Board Member knowledgeable on the topics addressed in paragraphs 1 through 9. The requested depositions shall solely relate to the topics addressed in paragraphs 1 through 9.

As detailed in the Proposed Production Letter, Enright Dec., Ex. 1, the items requested in Paragraphs 1 through 5 are narrowly tailored to provide Plaintiff with sufficient information to conclusively resolve disputes regarding the Foundation's jurisdictional defenses. Similarly, the items requested in paragraphs 6 through 9 are narrowly tailored to provide Plaintiff with sufficient information to further investigate the various concerns surrounding the status and safekeeping of the ICO Proceeds, as well as to determine whether seeking injunctive relief is in fact necessary to prevent irreparable harm to Plaintiff and the Proposed Class at this point juncture.

The requested limited discovery is reasonable under the circumstances at hand. Specifically, such discovery is reasonable because (1) the Foundation maintains that there is a dispute relating to this Court's jurisdiction over it, and (2) there are numerous concerns surrounding the status and safety of the ICO Proceeds which necessitate immediate further investigation—*e.g.*, the ongoing infighting amongst Tezos' leadership; repeated delays to the Tezos project; Defendants firing their auditor;

uncertainty regarding the precise amount of the ICO Proceeds that have been liquidated or dissipated; allegations that Gevers attempted to self-deal; and the bankruptcy of Gevers' company, Monetas, which raises serious questions as to his trustworthiness and/or competency to unilaterally establish the composition of the Foundation's board and/or manage and safeguard Plaintiff's and the Proposed Class' investments.

Further, the requested limited discovery will provide minimal burden on Defendants because the request: (1) is narrowly tailored to an investigation on just two specific topics; (2) seeks responsive production from two of the five Defendants—DLS and the Foundation—both of which appear to have a small number of employees involved in their governance and operation; (3) seeks production from a time period that covers just eight months; (4) primarily seeks the production of documents and records that are typically created and indexed by in any organization in the ordinary course of business, *e.g.*, bylaws, governance guidelines, and routine accountings; and (5) seeks depositions solely related to two issues and to take depositions of only one DLS representative and one Foundation Board Member. Each of the foregoing reasonably indicates that permitting Plaintiff to take the requested discovery from DLS and the Foundation will place minimal burden on the Defendants, including as it relates to the cost, time, and the difficulty in making such productions.

## II.   THE PSLRA ALLOWS FOR DISCOVERY UNDER THESE CIRCUMSTANCES

The PSLRA's automatic discovery stay provides as follows:

> In general. In any private action arising under this title [15 USCS §§ 77a et seq.], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 77z-1(b)(1).

In the Ninth Circuit "the automatic stay on all discovery under the PSLRA [applies] not only when a motion to dismiss is pending, but from the filing of the case until such time that 'the court has sustained the legal sufficiency of the complaint.'"  *In re Finisar Corp. Derivative Litig.*, 2012 U.S. Dist. LEXIS 23384, at *7 (N.D. Cal. Feb. 24, 2012) (citing *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1105 (C.D. Cal. 2007)).   In actions to which the PSLRA applies, the party seeking discovery

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

must show that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 77z-1(b)(1).

In the PSLRA discovery context, "undue prejudice" requires "a showing of improper or unfair detriment, which need not reach the level of irreparable harm." *In re Asyst Techs., Inc.*, 2008 U.S. Dist. LEXIS 119921, at *5 (N.D. Cal. Apr. 3, 2008) (citing *Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002)); *see also Medical Imaging Centers of America, Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996) ("This 'undue prejudice' standard is . . . something less than 'irreparable harm.'"); *Gerbino v. Sprint Nextel Corp.*, 12-2722-CM, 2013 WL 12129957, at *3 (D. Kan. Apr. 19, 2013) (stating that "undue prejudice" has been defined as "improper or unfair treatment amounting to something less than irreparable harm") (citing *Dipple v. Odell*, 870 F. Supp. 2d 386, 392 (E.D. Pa. 2012)); *see also Hufnagle v. RINO Int'l Corp.*, 2011 U.S. Dist. LEXIS 72078, at *3 (C.D. Cal. July 6, 2011).

Here, such extraordinary circumstances exist and a lift of the PSLRA's automatic discovery stay is necessary to prevent undue prejudice to Plaintiff and the Class.  Plaintiff will undoubtedly be faced with undue prejudice absent a grant of the instant Motion.  In MacDonald Action's TRO Order, this Court found that the current evidentiary record and plaintiff MacDonald's concerns were "not sufficient to support a finding of irreparable harm and therefore do not justify the 'extraordinary remedy' of issuing injunctive relief."  MacDonald Action, ECF No. 35 at pgs. 6-7.   However, this Court also held that there were various circumstances surrounding the status and operation of the Foundation that were "all worrisome."   Accordingly, Plaintiff seeks expedited discovery narrowly tailored to investigate Plaintiff's, the Proposed Class', and this Court's worries further.  In denying the TRO Application this Court held that the current evidentiary record does not support a finding of "irreparable harm."  *Id.*  However, Plaintiff contends that the "worrisome" factual record relating to the TRO Hearing, coupled with recent developments surrounding the Tezos project, are sufficient to satisfy the "undue prejudice" exception to the PSLRA's automatic stay, "which need not reach the level of irreparable harm."  *Asyst Techs., Inc.*, 2008 U.S. Dist. LEXIS 119921, at *5; *see also In re Grand Casinos Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) (explaining that Congress gave district courts discretion to grant relief from the stay); *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

2007 WL 518626, at *3 (E.D. Mich. Feb. 15, 2007) (same).

As noted *supra*, the Foundation has indicated that it intends to raise jurisdictional defenses. Absent a grant of the instant Motion, a dispute on the Court's jurisdiction over the Foundation may unnecessarily delay the progress of this action, during which time uncertainty as to the status and safety of Plaintiff's and the Proposed Class' investments would only be compounded further. Permitting Plaintiff to obtain documents necessary to further investigate the Foundation's jurisdictional defenses will enable such jurisdictional disputes to be resolved expediently, and thus without further delay and the attendant potential for further irreparable harm.

Indeed, in the event that Defendants are engaging in ongoing dissipation, liquidation, and/or conversion of the ICO Proceeds—a question which Plaintiff seeks to answer in seeking the requested discovery—any additional delays to the progress of this action will serve to increase the risk that Plaintiff and the Proposed Class will suffer irreparable harm and the requested relief by this litigation may become unavailable or inadequate. *See SEC v. Johnson*, 2001 U.S. Dist. LEXIS 27403, at *12-13 (S.D. Fla. Dec. 27, 2001) (stating that absent injunctive relief and an accounting, "funds may be further disbursed, transferred, and/or dissipated to the degree that any permanent relief the District Court may order may be rendered meaningless"). As such, Plaintiff and the Proposed Class are threatened with undue prejudice and the PSLRA's automatic stay on discovery should not apply. *See Vacold LLC v. Cerami*, 2001 U.S. Dist. LEXIS 1589, at *22-23 (S.D.N.Y. Feb. 16, 2011) (finding undue prejudice "where defendants might be shielded from liability in absence of the requested discovery"); *see also In re Royal Ahold N.V. Securities & ERISA Litigation*, 319 F. Supp. 2d 634, 635 (D. Md. 2004) (lifting PSLRA discovery stay where the plaintiffs "have shown that a delay in the production of the particularized discovery sought here would cause undue prejudice to their ability to litigate and, most significantly, resolve as expeditiously their claims against [the defendants]").

The same result should attach here, and the Court should grant Plaintiff limited expedited discovery on the narrow issues raised herein so as to prevent undue prejudice to Plaintiff and the putative Class.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order permitting the limited expedited discovery detailed in the Proposed Production Letter, Enright Dec., Ex. 1.

Respectfully submitted,

Dated: January 24, 2018                **LEVI & KORSINSKY, LLP**

By: _/s/ Donald J. Enright_____
Donald J. Enright (admitted *pro hac vice*)
1101 30th St., NW, Ste. 115
Washington, DC 20007
Telephone: (202) 524-4292
Facsimile: (202) 333-2121

Rosemary M. Rivas
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Eduard Korsinsky (to be admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

*Counsel for Plaintiff Andrew Okusko*

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY